GDA; WYC; AB
F.#2003R02533

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA 03 CR 929 (S-3)(NGG)

- against -

VINCENT BASCIANO, and
PATRICK DEFILIPPO.

Defendants.

- - - - - - - - - - - - - - - - - -X

THE GOVERNMENT'S OPPOSITION TO THE DEFENDANTS' MOTION
TO ADMIT THE COOPERATION AGREEMENT OF JOSEPH MASSINO
AND THE DEFENDANTS' REQUEST FOR A MISSING WITNESS CHARGE

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York 11201

GREG D. ANDRES
WINSTON Y. CHAN
AMY BUSA
Assistant United States Attorneys
(Of Counsel)

**Date: April 14, 2006**

# Table of Contents


PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

I. Factual Background . . . . . . . . . . . . . . . . . . . . . 2

A. Procedural History . . . . . . . . . . . . . . . . . . 2

B. Massino's Guilty Plea Allocution & Debriefings . . . . . . . . . . . . . . . . . . . . . 3

1. Sciascia Murder . . . . . . . . . . . . . . . . 4

2. Santoro Murder . . . . . . . . . . . . . . . . . 7

3. Solicitation To Murder Dominick "Donnie" Martino . . . . . . . . . . . . 8

4. Dominick Cicale . . . . . . . . . . . . . . . . 9

5. Additional Information . . . . . . . . . . . . . 9

C. Information In The Possession Of The Defendants . . . . . . . . . . . . . . . . . 10

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 11

A. The Defendants Are Not Entitled To Admit Facts About The Cooperation of Joseph Massino . . . . . . . . . . . . . . . . . . . 11

1. DeFilippo's Claims . . . . . . . . . . . . . . 11

2. Basciano's Claims . . . . . . . . . . . . . . 12

3. Legal Standard . . . . . . . . . . . . . . . . 14

4. Massino's Cooperation, Absent His Testimony Is Not Relevant To The Instant Matter . . . . . . . . . . . . . . . . 17

B. The Defendants Are Not Entitled To A Missing Witness Charge . . . . . . . . . . . . . . 20

1. Legal Standard . . . . . . . . . . . . . . . . 21

2. Massino Is Available To The Defense . . . . . 22

3. The Defendants' Request For A Missing Witness Charge Constitutes Gamesmanship . . . . 26

4. The Government's Reasons For Not Calling Massino . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 29

## PRELIMINARY STATEMENT

The defendants Basciano and DeFilippo seek to admit evidence of Joseph Massino's cooperation with the government, and various related "facts," namely that Massino was debriefed by the government, that the defense sought to interview him and that he refused the invitation to be interviewed. Additionally, the defendants also request that the Court include a "missing witness" charge in the Court's instructions to the jury in this matter. The government opposes both applications.

Massino's cooperation agreement and the related facts are not relevant in this matter given Massino was not called as a witness by either the government or the defense. Federal Rule of Evidence 401 and 402 thus preclude admission of this evidence. Further, even if Massino's cooperation is deemed to be "relevant," the probative value of this evidence is far outweighed by its prejudicial value, given the admission of this limited information, absence the substance of the information provided by Massino, would only confuse and mislead the jury about the circumstances of Massino's cooperation. Federal Rule of Evidence 403 thus also precludes admission of this evidence.

Second, no missing witness charge is appropriate here because – through their own contact with Massino prior to his cooperation and the information provided by the government with respect to Massino's anticipated testimony (by production of his

Section 3500 material) coupled with the fact that Massino will testify if called by the defense – Massino is not "unavailable" to the defense. Second, even if Massino is deemed "unavailable," no missing witness charge is appropriate given the defendants decision not to call Massino amounts to mere "gamesmanship" because if called to testify, Massino will directly implicate the defendants in many of the charged crimes, including the defendant DeFilippo's involvement in the murder of Gerlando Sciascia and the defendant Basciano's involvement in the murder of Frank Santoro.

## I. Factual Background

Below is a brief recitation of the relevant procedural history and a summary of other relevant information pertaining to the cooperation of Joseph Massino.

### A. Procedural History

On February 27, 2006, prior to opening statements, the government provided counsel and the Court with a its' witness list. Joseph Massino's name did not appear on that list. This fact is undisputed.[1] Further, prior to opening statements (although under no obligation to do so at this stage of the proceedings), the government provided Massino's Section 3500

---

[1] (See also Basciano Trial Transcript, 2216)("MR. LEVIN: Your Honor, yesterday we received the government witness list. The witness list does not mention Joseph Massino.").

material to the defense. This production included various items including Massino's cooperation agreement, various notes taken during his debriefings (more than 75 pages of notes in total) and various FBI FD-302s reflecting information provided by Massino during the course of his cooperation.

Later, during trial, the defendant DeFilippo requested an interview with Massino. (See Basciano Trial Transcript, 2230). The government relayed this message to Massino's counsel, Edward McDonald, Esq., who in turned declined to have his client interviewed by the defense. DeFilippo made this request on February 28, 2006. The government reported McDonald's declination on March 16, 2006. (Id. at 4868-4869).

The government has repeatedly informed the Court and the parties that if subpoenaed, the government would make Joseph Massino available to the defense to testify at trial. Counsel for the defendant DeFilippo has repeatedly responded that he would not call Massino as a witness without the opportunity to first interview him. On Wednesday, April 12, 2006, for the first time, the defendant Basciano stated that he would call Massino as a witness at trial. ((Id. at 8064).

### B. Massino's Guilty Plea Allocution & Debriefings

Based on the production of the Massino's Section 3500 material, the defense has been notified about the terms of

Massino's cooperation, the statements he has made under oath during his guilty plea allocution as well the substantive of his debriefings, among other information. In short, Massino has provided information on several of the charged crimes, including the murder of Gerlando Sciascia, the murder of Frank Santoro and the solicitation to murder Dominick "Donnie" Martino. Below is a summary of some of the relevant information provided by Massino.

**1. Sciascia Murder**

As the defense is aware, on June 23, 2005, the defendant Joseph Massino pled guilty before this Court to the murder-in-aid-of-racketeering of Bonanno family captain Gerlando Sciascia, also known as "George from Canada," in violation of Title 18, United States Code, Section 1959(a)(1). A copy of Massino's cooperation agreement and the transcript of his guilty plea allocution were produced as 3500-JM-1 and 3500-JM-5, respectively. In allocuting to his role in the Sciascia murder, Massino specifically identified the following participants in that crime: Salvatore Vitale, Johnny Joe [Spirito], Michael Nose [Mancuso] and the defendant Patrick DeFilippo.[2]

---

[2] (See Massino Guilty Plea Transcript, 3500-JM-5, 18-20 ("THE COURT: At this time, I would like you to briefly describe in your own words what you did to commit the crime charged in Count Nine of this indictment. MASSINO: As the boss of the Bonanno family, I gave the order. THE COURT: And the order was to do what? MASSINO: Kill George from Canada. THE COURT: And when did this occur? MASSINO: March of '99. THE COURT: Where were you when you gave the order to kill Gerlando Sciascia — who is George

During his debriefings with the government, Massino has provided, in sum and substance, the following information about the Sciascia murder (as detailed in 3500-JM-21-00000024, among other documents):

- Massino ordered the murder of George from Canada (Gerlando Sciascia) and approximately two weeks prior to Sciascia's murder, Massino gave the "work" to Bonanno family captain Patrick DeFilippo at Danny's Chinese Restaurant; at the time of his murder, Sciascia had an ongoing dispute with DeFilippo over marijuana and on the night of his murder, Sciascia thought he meeting with DeFilippo to discuss this dispute;

- Michael Mancuso, a member of the Bonanno family in DeFilippo's crew, left a message for Sciascia at a jewelry store in the Bronx informing Sciascia to meet DeFilippo in Manhattan; Mancuso informed "John the Jeweler" (John Chiazzese) where in Manhattan Sciascia was to meet DeFilippo; Sciascia traveled to a street near DeFilippo's apartment in Manhattan and later entered Johnny Joe Spirito's truck where he was shot by

---

from Canada, is that right? MASSINO: Yes. THE COURT: Where were you? MASSINO: Queens. COURT: Queens, New York. MASSINO: Yes. MASSINO: It was done by Sal Vitale, Johnny Joe [Spirito], Michael Nose [Mancuso] and Patty DeFilippo. THE COURT: And their proper names? MASSINO: I don't know Johnny Joe's last name. COURT: Who are the other persons? MASSINO: Michael Nose. COURT: Michael Nose is? MASSINO: He's a captain in the Bonanno family. THE COURT: And who else? MASSINO: Johnny Joe. THE COURT: Johnny Joe is? MASSINO: He's a good fellow. THE COURT: Also a — MASSINO: In the Bonanno family. THE COURT: – made member of the Bonanno crime family? MASSINO: Made member. THE COURT: All right. Is there anything else you would like me to ask the defendant? [AUSA]: Judge, just that the murder, the purpose of the murder was to maintain or increase position within the Bonanno crime family. THE COURT: Was the purpose of the murder in order to maintain or increase your position within the Bonanno crime family? MASSINO: Yes, your Honor. [AUSA]: And, Judge, the defendant acted knowingly and willfully. THE COURT: Did you act knowingly and willfully in ordering the murder of George from Canada? MASSINO: Yes, I did.")).

DeFilippo using a .25 caliber gun; Spirito was the driver of this truck and DeFilippo was in the front passenger seat; Sciascia was in the back passenger seat when he was shot;[3]

- Bonanno family underboss Salvatore Vitale was on-scene the night of the homicide and observed Sciascia enter Spirito's truck; Mancuso was in a "back-up" vehicle;

- After the murder, Spirito drove the truck to the Bronx and met up with Mancuso; DeFilippo got into Mancuso's car with the gun and Mancuso got into Spirito's truck to dispose of Sciascia's body with Spirito; Sciascia's body was dumped somewhere in the Bronx;

- Attempts to clean Spirito's truck were unsuccessful given the amount of blood resulting from Sciascia's murder; Jerry Asaro, another member of the Bonanno family, was later tasked with disposing of Spirito's truck; Salvatore Vitale asked Asaro to perform this service;

- Spirito later told Massino at the MDC (at a time when both men were incarcerated there) that he took the license plates from his truck and placed them on a friend's truck that was the same make and model; Spirito parked this car in his driveway until he reported the truck stolen a few days later;

- At the time of the Sciascia murder, Massino was in St. Martin with Thomas D'Ambrosio; after Sciascia was

---

[3] On September 27, 2005, the defendant John Joseph Spirito pled guilty before this Court, pursuant to a plea agreement, to racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d). The count of conviction included as predicate acts the conspiracy to murder Gerlando Sciascia and illegal gambling (sports betting and joker poker machines). During his plea allocution, Spirito stated, in substance, that: (a) at least one other person was involved in the Sciascia murder conspiracy; (b) on March 18, 1999, he drove the car in which Sciascia was killed and used the car to pick up Sciascia with the intent to kill him; and (c) he was involved in dumping Sciascia's body on Boller Avenue in the Bronx. (See Transcript of Spirito Guilty Plea (September 27, 2005) at 37-40) (produced as an Exhibit to the Government's Response to the Defendants' Pretrial Motions)).

killed, Massino was contacted by Salvatore Vitale stating in sum and substance, "I picked up the dolls for the babies," a prearranged code to signify that Sciascia had been killed;

- Upon Massino's return to New York, Massino's son-in-law picked him up at the airport and told him that he read in the newspaper that a Bonanno captain had been murdered; Massino later learned from Vincent Basciano that Anthony Urso, a captain in the Bonanno family, had provided the gun that was used to kill Sciascia; and

- Massino instructed members of the Bonanno family to attend Sciascia's wake in an attempt to send a message that the Bonanno family did not sanction nor commit this homicide.

**2. <u>Santoro Murder</u>**

Massino has provided the following information, in sum and substance, with respect to the Santoro murder (as detailed in 3500-JM-21-00000014-000000015):

- Massino first learned about the Santoro murder from Salvatore Vitale, who was informed of the murder by Bonanno family captain Patrick DeFilippo; Massino ordered Vitale to bring DeFilippo to a meeting with Massino so that Massino could inquire about the "details" of the murder;

- DeFilippo told Massino that the Bonanno family learned from the brother of Jimmy Calabrese (James Martino) that Santoro was going to kidnap one of Basicano's children; Santoro and Calabrese's brother were both "junkies" from the neighborhood;

- DeFilippo told Massino that the murder was an emergency situation and that Basciano, Dominick Cicale and Anthony Donato were involved; Massino was not happy that DeFilippo relied on the word of a "junkie" and that he did not receive all the facts prior to authorizing a murder;

- Approximately one week later, Massino spoke to Basciano at CasaBlanca at which time Basciano explained the

urgency of the Santoro murder; Basciano explained that Anthony Donato heard from Martino's brother that Santoro was going to kidnap one of Basciano's children, that Donato relayed this story to Basciano and that Basciano received DeFilippo's permission to kill Santoro; Basciano further stated that he, Dominick Cicale, Anthony Donato and Bruno Indelicato were involved in the Santoro homicide, that Basciano and Cicale were the shooters, that Basciano used a shotgun and Cicale used a .38 caliber handgun and that two vehicles were used; Basciano further stated that Donato drove one car and Indelicato drove a second, his sister-in-law's truck; Indelicato covered the plates with cardboard; the shooters travelled in one car and the second car was used as a "crash car;" and

- Massino was upset that Indelicato was involved with the homicide because he did not get permission from his captain, William Riviello, to participate in the murder; Massino later had a conversation with Indelicato and stated in substance, that Indelicato should know better (than to be involved in a murder without the permission of his captain) because Indelicato had been a captain in the Bonanno family.

**3. Solicitation To Murder**
**<u>Dominick "Donnie" Martino</u>**

Massino has provided the following information, in sum and substance, with respect to the solicitation to murder Dominick "Donnie" Martino (as detailed in 3500-JM-21-00000017):

- Basciano asked Massino for permission to kill Jimmy Martino's brother (Dominick "Donnie" Martino); Jimmy Calabrese (James Martino) is a made member of the Genovese family;

- Basciano told Massino that Donnie Martino hit Anthony Donato in Louie Cigars' club in the Bronx; Massino asked Basciano if Donnie Martino knew that Donato was a made member of the Bonanno family at the time of the incident; Basciano was not aware of whether Donnie Martino knew Donato's position; Massino instructed Basciano to inform James Martino that Donato is a "goodfella" and to communicate this information to his

brother, Donnie;

- Massino did not grant Basciano's request to kill Donnie Martino due to the fact that Donnie Martino was unaware of Donato's position.

4. **Dominick Cicale**

Massino has provided the following information, in sum and substance, with respect to Dominick Cicale (as detailed in 3500-JM-21-00000018):

- Dominick Cicale was originally around the "West Side;" after the "dog walking incident" (the Santoro murder) Basciano asked "Ernie" (Ernie Muscarella) for Cicale's release to the Bonanno family;

- Cicale was at one time married to a corrections officer; there is "bad blood" between Cicale and "Hippie" of the "West Side" although Massino does not know the reason for this bad blood;

- Basciano asked Massino for permission to kill Cicale's girlfriend (Lynne Ayuso) because she told Angela Basciano that Basciano had a child with a girlfriend; Massino did not grant Basciano's request.

5. **Additional Information**

Massino has also provided information about Basciano's involvement in various illegal gambling operations (to include policy, joker poker machines and sports betting), loansharking (although not necessarily the loansharking crimes charged in the indictment) and other acts of violence as well as Basciano relationship to Thomas Lee (as detailed in 3500-JM-21-00000024 ("Tommy Lee – VB's guy; Vinny initially sent Lee to see JM; Lee says he's a mutual friend")). With respect to DeFilippo, Massino

has provided information about DeFilippo's involvement in illegal sports betting and other crimes, including crimes of violence (such as the conspiracy to murder Anthony Donato admitted pursuant to Rule 404(b) and detailed in 3500-JM-21-00000013).

### C. Information In The Possession Of The Defendants

Indeed, not only does the defense have access to information provided by Massino since his cooperation, they also necessarily have information provided by Massino himself during the time he was their codefendant and participated in codefendant meetings prior to his cooperation.[4] Further, as has been discussed in Court, the defense has long had access to (both themselves from Massino's prior counsel (although not necessarily with the consent of Massino) and also through production by the government) of the so-called "Massino 302s" – that is the FBI 302s of the cooperating witnesses who testified in the Massino trial which were annotated by Massino in preparation for his trial. (See Basciano Trial Transcript, 2219-2220).

[4] It is undisputed that Massino participated in codefendant meeting with the defendants – with DeFilippo since at least the time of DeFilippo's arrest in August of 2003 and with Basciano since the time of Basciano's November 2004 arrest.

## II. ARGUMENT

Neither the defendants' request to admit facts about the cooperation of Joseph Massino nor the defendants' request to include a missing witness charge is supported by Second Circuit authority. Both requests should be denied.

### A. The Defendants Are Not Entitled To Admit Facts About The Cooperation of Joseph Massino

First, the defendants seek to admit certain facts pertaining to the cooperation of Joseph Massino. Specifically, the defendants seek to introduce: (1) Massino's cooperation agreement; (2) the fact of Massino's debriefings; (3) the defendants' request to interview Massino (to date only DeFilippo has formally requested to interview Massino); and (4) Massino's refusal to be interviewed. (DeFilippo April 10, 2006 Letter, 1).

#### 1. DeFilippo's Claims

In support of this argument, DeFilippo references only generic principles about the right to "a fair trial" and the right to "present a defense." DeFilippo cites to four cases in support of these principles: Chambers v. Misssissippi, 410 U.S. 284, 295 (1973)(defendant's right to a fair trial denied based on the exclusion of testimony on hearsay grounds), Washington v. Texas, 388 U.S. 14, 19 (1967)(defendant's Sixth Amendment right denied because he was denied the right to place on stand witness

who was physically and mentally capable of testifying to events that he had personally observed and whose testimony would have been relevant and material to defense), Christie v. Hollins, 409 F.3d 120, 125 (2d Cir. 2005)(defendant's habeas application granted because exclusion of unavailable witness's prior testimony violated petitioner's constitutional right to present a defense) and United States v. Saldarriaga, 204 F.3d 50, 52 (2d. Cir. 2000)(district court's instruction to the jury on the government's investigative techniques was not improper).

Not one of the cases cited by the defense deals specifically with the admission of a cooperation agreement of a non-testifying witness, the admission of facts pertaining to such a witness' cooperation or the fact that a defendant requested to interview a cooperating wintess and that witness' refusal to be interviewed. Indeed, no reported Second Circuit case specifically authorizes the admission of such evidence despite the ample caselaw dealing with missing witnesses and missing witness charges, as further discussed below. In short, the defendant DeFilippo has failed to provide any authority for his application to admit the requested "evidence."

**2. Basciano's Claims**

The defendant Basciano has joined the defendant DeFilippo's written motion in support of the admission of the various facts surrounding Massino's cooperation. In Court on

April 11, 2006, Basciano provided the following additional justifications for the admission of this evidence: (1) the fact that Basciano discussed Massino's cooperation during his opening statement; and (2) that the failure to admit such evidence would undermined the credibility of Basciano's counsel before the jury. (See Basciano Trial Transcript, 7856-7857).[5] Basciano, during his oral presentation cited to no caselaw or other authority which supported his application or which dealt specifically with his various justifications for the admission of this "evidence."[6]

---

[5] (Basciano Trial Transcript, 7856-7857 ("MR. LEVIN: The initial matter, my cocounsel, Mr. Levitt, filed a letter, I believe ECF, enunciating the reasons why we believe that Joseph Massino's cooperation agreement should come into this case. In addition to what was put forth in the letter, I'd like to just make the following statements. As your Honor knows, I opened up on this in my opening statement and my opening statement was based upon the fact that the government had let it be known that they intended to call Joseph Massino. In addition to that, we received 3500 material for Joseph Massino evidencing that he was a cooperator, evidencing what he would or would not testify to concerning Mr. Basciano, and if I am not allowed in the defense case to bring out that Massino was a cooperator, I will have lost all my credibility before the jury in summation. And it's not as if I don't have a good-faith basis for this. Besides the relevance that we have put forth to the Court, why we are entitled do this and why we want to do it, there is no question that the man was in fact a cooperator. And it's incredibly important that I be able to develop that on the defense case as well as bring it out in summation. Basciano, during his oral presentation cited to no caselaw or other authority support his application or which deal specifically with his various justifications for the admission of this evidence.")).

[6] Basciano's counsel also referenced the cooperation of Frank Lino, Joseph D'Amico, Gaetano Peduto and Frank Coppa during his opening statement, all of whom did appear on the government's witness list (unlike Massino) but who were not called as witnesses in this matter. (Basciano Trial Transcript, 2010,

3. **Legal Standard**

Federal Rules of Evidence 401, 402 and 403 work in tandem to ensure, in the discretion of the trial judge, that irrelevant and prejudicial evidence not be admitted at trial. Tome v. United States, 513 U.S. 150 (1995)("The codification, as a general matter, relies upon the trial judge's administration of Rules 401, 402, and 403 to keep the barely relevant, the time wasting, and the prejudicial from the jury."); Huddleston v. United States, 485 U.S. 681, 688 (1988)("Article IV of the Rules of Evidence deals with the relevancy of evidence. Rules 401 and 402 establish the broad principle that relevant – evidence that makes the existence of any fact at issue more or less probable – is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, 'its probative value is substantially outweighed by the danger of unfair prejudice.'").

Federal Rule of Evidence 401 defines relevant evidence as "evidence having tendency to make the existence of any fact that is of consequence to the determination of the action more

---

2017-2018, 2025, 2037). Nonetheless, Basciano has not sought to admit the cooperation agreements of these witnesses, exposing the true basis for his request only to admit the cooperation agreement of Massino – which is simply to mislead the jury that Massino would provide testimony favorable to the defense. Further, it remains undisputed that Basciano has already mislead the jury during his opening statement by contradicting the very terms of his "stipulation" to various elements of the charged crimes – concessions he made before the Court but which he disputed before the jury.

probable or less probable than it would be without the evidence." See United States v. Abel, 469 U.S. 45, 50-51 (1984). Thus, Rule 401 includes two requirements for evidence to be relevant: (1) that the evidence tends to prove the matter that is sought to be proven; and (2) that the matter sought to be proven is one of consequence to the determination at issue. Evidence that is not relevant is not admissible under Rule 402. Fed.R.Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.").

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The probative value of a piece of evidence is:

> also informed by the availability of alternative means to present similar evidence. Specifically, the Supreme Court has advised that the 'Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives.'

United States v. Awadallah, 436 F.3d 125, 143 (2006).

As noted, the government was unable to located, and the

defense has not cited to, any authority which deals specifically with the issue of the admission of a cooperation agreement of a non-testifying witness. Courts generally address the propriety of admitting cooperation agreements into evidence when the government seeks to admit such documents during the testimony of cooperating witnesses. The Second Circuit has repeatedly held that the government may introduce a witness' cooperation agreement into evidence only after the testifying witness' credibility has been attacked. See United States v. Argentina, 2006 WL 851112, *2 (2d Cir. 2006)("When defense counsel persistently attacks the cooperating government witness's credibility, a district court rightly permits 'the government to introduce into evidence the various cooperation agreements and to elicit testimony about each cooperating witness's understanding of what his agreement required-specifically, to tell the truth.'); United States v. Cosentino, 844 F.2d 30, 33 (2d Cir. 1988)("Because of the bolstering potential of cooperation agreements . . . we have permitted such agreements to be admitted in their entirety only after the credibility of the witness has been attacked.").[7]

---

[7] While the defendants are permitted to impeach a hearsay declarant pursuant to Federal Rule of Evidence 806, a cooperation agreement only impeaches the testimony of a witness to the extent it establishes that the witness, here Massino, had a motive to curry favor with the government. Since the hearsay statements made by Massino at issue were made prior to the time he signed his cooperation agreement with the government, his cooperation agreement would not be proper impeachment material.

As discussed below, while there is ample caselaw about missing witnesses – indeed missing "cooperating" witnesses – and jury instructions about missing witnesses, there is no discussion in those cases about the admission of cooperation agreements, or the fact of a missing witness' cooperation. No caselaw supports the proposition that if a missing witness charge is given the defense is also entitled to admit evidence of the cooperation of the missing witness in question "lay a foundation" for such an argument.

### 4. Massino's Cooperation Absent His Testimony Is Not Relevant To The Instant Matter

The defendants' motion to admit the cooperation agreement of Joseph Massino, the fact of his cooperation and the defense request to interview Massino should be denied pursuant to Federal Rule of Evidences 401, 402 and 403. In short because Massino has not been called as a witness by either the government or the defendants, his cooperation and cooperation agreement are not relevant to any issue at trial. Neither "fact" tends to prove the innocence of the charged defendants. To date, the Court has consistently limited cross-examination in this matter on the issue of Massino's cooperation given that issue is not relevant to the instant proceedings.[8]

[8] During the cross-examination of Dominick Cicale, the Court sustained an objection by the government to questioning

At no point in their submission or in Court, has either defendant ever established the relevancy of any evidence pertaining to the fact alone of Massino's cooperation or the mere existence of his cooperation agreement. The defendant DeFilippo never addresses this issue in his submission. The defendant Basciano's claim that he seeks to admit this evidence because he "opened" on Massino's cooperation or to establish credibility with the jury is baseless. Basciano cites no authority for either proposition. Evidence is relevant based on the nature of the materials or facts which are proffered, not based on the arguments or credibility of defense counsel.

Further Rule 403 provides ample authority for the Court to preclude any evidence relating to Massino's cooperation, as the Court has to date during the cross-examination of other trial

---

about Massino's cooperation, and the Court noted that to admit evidence of Massino's cooperation, the defense had to "do it through Massino. No more." (Id. at 6111); (see id. at 4512 (Testimony of Richard Cantarella)(MR. LEVIN: "Q. As you sit here today do you know if Joseph Massino is now a cooperator? MS. BUSA: Objection. THE COURT: Sustained."));(id. at 4636-4637 (Testimony of Special Agent Joseph Bonavolonta)("MR. LEVIN: Q. Mr. Bonavolonta, to your knowledge as an FBI agent sharing information with the rest of the squad, was Joe Massino an informant on November 19th, 2004. MR. ANDRES: Objection, move to strike. THE COURT: Sustained. Q. Do you know if Joe Massino is an informant? MR. ANDRES: Objection to the question. I move to strike. THE COURT: Sustained. MR. LEVIN: No further questions.")); (id. at 6900 (Testimony of Thomas Lee)(MR. LEVIN: "Q. Sometime in January of '05, or February of '05, you became aware that Joseph Massino had become an informant, had you not, s[]ir? MR. CHAN: Objection. THE COURT: Sustained. Q. Did you come -- did you come to learn that Joseph Massino was an informant? MR. CHAN: Objection. THE COURT: Sustained.")).

witness. To begin, there is no probative value whatsoever in admitting the fact of Massino's cooperation alone; his cooperation, without the substance of his information, proves nothing about any of the charges at issue. Indeed to admit evidence of Massino's cooperation alone, would only both confuse and mislead the jury. Confusion would occur because the jury would be left only with the irrelevant fact that Massino cooperation, without providing any details of the information Massino provided, evidence in this case which would establish the defendants' guilt with respect to most of the charged crimes. Admission of the mere fact of Massino's cooperation would also be misleading, creating the inference that Massino somehow exculpated the defendants in the charged crimes, a fact known to the defense to be inaccurate.

Finally, the defendant DeFilippo's argument that he seeks to admit Massino's cooperation agreement as a means to "lay the foundation" to support the argument that the government never called Massino as a witness ignores the fact that Massino's cooperation, given he was not called as a witness, is not relevant. To the extent that this argument is intended to lay a foundation for a missing witness charge, as discussed below, such a charge is not appropriate here and even if such a charge was included by the Court, the admission of Massino's cooperation agreement is not a necessary predicate to establish this argument

(if even permissible).[9]

**B. The Defendants Are Not Entitled To A Missing Witness Charge**

The defendants also argue that a missing witness charge is appropriate here given the government's failure to call Massino as a witness at trial. In particular, the defendants note the relationship between Massino and the government and claim that Massino is not equally available to both parties in this matter. The defendants' request should be denied.

**1. Legal Standard**

A missing witness charge may be appropriate where a party "fails to call a witness whose 'production . . . is peculiarly within [its] power.'" United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004)(quoting United States v. Mittelstaedt, 31 F.3d 1208, 1216 (2d Cir.1994)). If the witness in question is available to both sides, "the failure to produce is *open* to an inference *against both parties*." United States v. Torres, 845 F.2d 1165, 1169 (2d Cir. 1988)(citing 2 Wigmore,

---

[9] In United States v. Wagner, 103 Fed.Appx. 422, 430 (2d Cir. 2004), the Second Circuit upheld then-District Judge Raggi's decision not to give a missing witness charge with respect to a cooperating witness who was not called as a witness at trial (by either side). While the Court in that matter, allowed counsel to argue in summation that "an adverse inference could be drawn from [the cooperating witness]'s absence," there is nothing in that opinion which establishes that the witness' cooperation agreement, or the facts of his cooperation, needed to be admitted in order for that argument to be made to the jury. Id.

Evidence § 288, at 208). No missing witness instruction is necessary "where the unpresented testimony would be merely cumulative." Id.

Courts have considered the following factors in determining whether to include a missing witness instruction to the jury: whether the witness was "equally available" to both parties, the circumstances of the relationship between the parties (including the existence and nature of any cooperation agreement), the defense's interest in and attempts to interview the witness, and the reasons the witness was not called to testify. Whether the witness is within the power of one party depends on all the facts and circumstances bearing on the witness's relationship to both parties. United States v. Myerson, 18 F.3d 153, 158 (2d Cir. 1994).

Courts have held that it is within the trial court's discretion whether to instruct the jury that it may infer that the testimony of an uncalled witness would have been unfavorable to the party electing not to call that witness. See Torres, 845 F.2d at 1171. Appellate courts have "a well deserved reluctance to remove the issue from the sound discretion of the trial judge in part because of the usual aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than the appellate court." United States v. Mittelstaedt, 31 F.3d 1208, 1215 (2d Cir.

1994)(quoting Torres, 845 F.2d at 1170-71 (internal quotation marks omitted)).

**2. Massino Is Available To The Defense**

While Massino is arguably within the "control" of the government, that is, he could be called as a witness by the government without the need to immunize him, Massino is equally available to the defense if subpoenaed to testify. In response to the defendant Basciano's request to call Massino as a witness, for example, the government has arranged for Massino's appearance at trial. By contrast, the defendant DeFilippo has stated that he does not intend to subpoena Massino to testify at trial and accordingly a missing witness charge is not appropriate.

Sand's Modern Federal Jury Instructions state the following in its materials accompanying his standard missing witness charge: "Note that there is authority that the party seeking the instruction must have made some effort to call the witness." Sand, Modern Federal Jury Instructions, ¶ 6.04, Instr. 6-5, pp 6-16-17 (Matthew Bender 2003) (citing United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997)). In short the defense should not be afforded the dual benefit of both not calling Massino as a witness at trial, and a jury instruction on the government's failure to call Massino as a witness when the defense was afforded the opportunity to call Massino as a witness. See United States v. Erb, 543 F.2d 438, 445 (2d Cir.

1976)("[t]here is more than the usual aura of gamesmanship in the arguments to us on this issue. The defense had interviewed [the claimed unavailable witness] and presumably would have offered his testimony if it could have been helpful. For reasons of their own, defendants chose not to do so, thus avoiding any possible damaging effect from presenting [this individual] as a witness while at the same time attempting to get the benefit of an inference from his absence.").

While Courts have held that a defendant's failure to interview a witness may establish a proper basis for a missing witness charge,[10] these cases do not address, as here, a situation where the defendants were provided with substantial information relating to the missing witness' debriefings and thus the substance of his anticipated testimony. Here, much of Massino's anticipated testimony has been disclosed to the defense through his Section 3500 material, an issue further discussed below. Thus the defendants are well aware that, based on the information he provided during his debriefings, if called to testify, Massino would specifically identify the defendants' as participants in several charged crimes, including the most

---

[10] But see United States v. Frost, 1999 WL 1024092, *2 (S.D.N.Y. Oct. 28, 1999)(citing United States v. Sorrentino, 72 F.3d 294, 296, 298 (2d Cir. 1995))(""It is true that defense counsel would have subpoenaed the CI at their peril, unable to know beforehand the content of his testimony. But a witness's unwillingness to speak with defense counsel does not automatically entitle defendants to a 'missing witness' charge.").

serious crimes, notably the Sciascia and Santoro murders, as well as the solicitation to murder Dominick "Donnie" Martino.[11] Massino has, for example, under oath at his guilty plea, already identified the defendant DeFilippo as a participant in the Sciascia murder. (See Massino Guilty Plea Transcript, 18-20 (provided as 3500-JM-5)).

In United States v. Abelis, 146 F.3d 73, 84 (2d Cir. 1998), the Second Circuit upheld the district court's decision not to include a missing witness charge, for a witness-victim despite the fact that the witness in question declined to be interviewed by the defense, because the witness was available to testify and the government had disclosed documents pertaining to the information that the witness provided as well as other

[11] DeFilippo argues that portions of the handwritten notes provided for Massino "reflect his disagreement with critical aspects of the government's case." (DeFilippo April 10, 2006 Letter, 4, n.2). DeFilippo, however, fails to detail these "disagreement[s]" despite having access to this material since before the opening statements in this matter. Nor can there be any dispute that Massino has, and if called to testify will, identify DeFilippo as a participant in several charged crimes, namely the charged illegal gambling and the Sciasica murder charges. Further, that counsel has identified "discrepancies" between the information provided by Massino and the testimony of others witness, further establishes that DeFilippo has ample information to determine whether or not, as a matter of trial strategy, to call Massino as a witness and that fact that he has failed to do so, and refuses to do so, is evidence, as discussed below, that in choosing not to call Massino as a witness, DeFilippo is merely engaging in the type of gamesmanship which negates any right to a missing witness charge.

materials relating to the non-testifying witness.[12] Here, the defense has been provided not only with information pertaining to Massino's debriefings, his guilty plea and his cooperation agreement, but also information that may be helpful to the defense, namely the annotated FBI-302s (the so-called "Massino 302s") on which Massino comments on the information provided by other cooperating witnesses. Further, Massino, as a one-time codefendant, participated in codefendant meetings with the defendants for an extended period of time at which time, the defendants clearly had access to Massino.

In short, the defense has both had access to Massino himself and the information he provided both before and after his cooperation, and accordingly there is ample information available for them to make a decision about whether to call him as a witness and to undermine the claim that he is, or was, unavailable to the defense.[13] The defense in their oral and written presentations has not identified any additional information for which they would seek to question Massino about

[12] This is not to suggest that Massino's account of these crimes mirror exactly that of other witnesses, it does not. Nonetheless, Massino's testimony would materially corroborate the accounts of other witnesses who have testified at trial as evidenced by the information provided in his Section 3500 material.

[13] Massino's situation is thus vastly different from the "typical" unavailable witness, often a confidential informant, with whom the defense has not had the opportunity to repeatedly interview.

the charged crimes. Accordingly, the fact that Massino was never "interviewed" by the defense (after his cooperation) is not a relevant factor here, indeed, there remains virtually no area of inquiry that the defendants could pursue during an interview upon which Massino has not already provided information.

### 3. The Defendants' Request For A Missing Witness Charge Constitutes Gamesmanship

Courts have been reluctant to find a witness to be "unavailable" to the defense when it appears that the defense had no real interest in calling the witness to testify, but merely engage in a form of gamesmanship in an effort to obtain a missing witness charge. See Torres, 845 F.2d. 1165 (2d Cir. 1988). Given the substantial information available to the defense about which Massino would testify, and specifically the fact that Massino has provided information about the defendant DeFilippo's involvement in the Sciasica murder and the defendant Basciano's involvement in the Santoro murder and the solicitation to murder Dominick Martino (and the solicitation to murder Salvatore Vitale and Cicale's girlfriend), as well as both defendants' involvement in yet other crimes, the defendants' decision not to call Massino as a witness can be attributed to the fact that he will not provide tesitmony favorable to the defense and not the mere fact

that he has not been interviewed.[14]

A witness is not deemed unavailable, when the decision to call such a witness turns on the defendants' unwillingness to call that witness, and not the mere fact that the witness had not been interviewed by the defendant. See Torres, 845 F.2d at 1169 (Second Circuit did not find a witness unavailable noting that while witness refused to be interviewed, the defendant was aware that government would present evidence through that witness of the defendant's involvement in the charged crime and thus the district court could have "easily determined" that existence of this available evidence and not the witness' refusal to be interviewed was the basis of the defendant's failure to call the witness to testify).[15]

Accordingly, given that Massino's testimony would more likely than not "have been unfavorable" to the defense, and not the government, no missing witness instruction is appropriate

---

[14] Massino inculpates both defendants with respect to most of the charged crimes and accordingly his testimony, rather than being favorable to the defendants, would be devastating in establishing their guilt. Massino was himself, as he acknowledged in his guilty plea, a direct participant in the Sciascia murder and he has provided information that he gave DeFilippo the order to kill Sciascia. This testimony is not favorable to DeFilippo in any respect. Further, Massino spoke to Basciano himself about the Santoro murder, during which time Basciano acknowledged his participation as a shooter (and that of Cicale) in the Santoro murder - this testimony would clearly not be favorable to Basciano.

[15] See also Erb, 543 F.2d at 445 (defendants can not both choose not to call an available witness whose testimony would be unfavorable and also benefit from an inference arising from the absence of such a witness).

here. See United States v. Caccia, 122 F.3d 136, 138-139 (2d Cir. 1997).

**4. The Government's Reasons For Not Calling Massino**

Finally, in determining whether a missing charge is appropriate, the Court may also consider the government's reasons for not calling Massino as a witness. To begin, Massino's testimony at the trial in this matter would be cumulative (in a trial which has already lasted for more than seven weeks), and accordingly, a missing witness charge would not be appropriate. See United States v. Tyers, 487 F.2d 828, 831 (2d Cir. 1973)(no missing witness charge given where unpresented testimony would be merely cumulative). Neither defendant has articulated any material fact that would be elicited from Massino that has not already been presented to the jury thus rendering his testimony as either necessary or material.[16]

[16] There are additional valid justifications for the government's decision not to call Massino's as a witness (which refute the claim that the government is, for example, attempting to "hide" Massino because his testimony would be "unfavorable" to the government), including the need to call Massino as a witness in subsequent prosecutions, such as Basciano II. Additionally, the Court's decision not to permit the admission of any evidence of Basciano's involvement in the solicitation to murder a federal prosecution is also a relevant factor in the government consideration not to call Massino as a witness. While the government does not contest the Court's ruling on that matter, as developed during the Massiah hearing in this matter, Massino's information about Basciano's involvement in that crime coupled with Massino's willingness to consensually record conversations, were relevant factors in the decision to cooperate Massino, if

## CONCLUSION

For the reasons set forth above, the Court should deny the defendants' application to admit evidence of Joseph Massino's cooperation as well as the defendants' request for a missing witness charge.

Dated: Brooklyn, New York
April 14, 2006

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York 11201

GREG D. ANDRES
WINSTON Y. CHAN
AMY BUSA
Assistant United States Attorneys
(Of Counsel)

---

not the primary factors.