**Jury Charge Court Draft #3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

<u>JURY CHARGE</u>
<u>COURT DRAFT #3</u>

v.

03-CR-929 (NGG)

VINCENT BASCIANO, and
PATRICK DEFILIPPO,

Defendants.
-----------------------------------------------------X

GARAUFIS, United States District Judge.

Now that the evidence in this case has been presented and the attorneys for the Government, Mr. Basciano and Mr. DeFilippo have concluded their closing arguments, it is my responsibility to instruct you as to the law that governs this case. My instructions will be in three parts:

First: I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case;

Second: I will instruct you as to the legal elements of the crimes charged in the indictment - that is, the specific elements that the Government must prove beyond a reasonable doubt to warrant a finding of guilt; and

Third: I will give you some general rules regarding your deliberations.

## Part I

### 1. The Role of the Court

Members of the jury, you now have heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as stating the law on its own. You should instead consider my instructions as a whole when you retire to deliberate in the jury room.

You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be or ought to be it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

## 2. The duties of the jury

To begin with - it is your duty to find the facts from all the evidence in this case. You are the sole judges of the facts. It is, therefore, for you and you alone to pass upon the weight of the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence or lack of evidence in this case.

With respect to any question concerning the facts, it is your recollection of the evidence that controls.

You must apply the law in accordance with my instructions to the facts as you find them. While the lawyers may have commented on some of the legal rules, you must be guided only by my instructions about the rules. You must follow all of the rules as I explain them to you. You may not follow some rules and ignore others. Even if you disagree with the rules or don't understand the reasons for them, you are bound to follow the legal rules that I describe.

## 3. Parties are equal before the court

The fact that this prosecution is brought in the name of the United States

Government does not entitle the United States to any greater consideration than Mr. Basciano and Mr. DeFilippo. By the same token, it is entitled to no less consideration. The parties, the United States Government, Mr. Basciano and Mr. DeFilippo, are equal before this court, and they are entitled to equal consideration. Neither the Government nor the defendants are entitled to any sympathy or favor.

4. **Presumption of innocence**

The indictment that was filed against Mr. Basciano and Mr. DeFilippo is the means by which the Government gives them notice of the charges against them and brings them before the court. It is nothing more. The indictment is only an accusation. The indictment is not evidence and you are to give it no weight in arriving at your verdict.

Mr. Basciano and Mr. DeFilippo pleaded "not guilty" in response to the indictment. They are each presumed to be innocent unless and until guilt has been proved beyond a reasonable doubt, and that presumption alone, unless overcome, is sufficient to acquit them. Mr. Basciano and Mr. DeFilippo are on trial for the crimes charged in the indictment and not for anything else.

Evidence has been introduced as to the involvement of other persons in the

crimes charged. That those persons are not also on trial here is not a matter of concern to you. You should not speculate as to the reasons why those persons are not on trial. Your only concern is whether the Government has or has not proved the guilt of Mr. Basciano and/or Mr. DeFilippo beyond a reasonable doubt.

5. **Burden of proof on Government**

Since the law presumes Mr. Basciano and Mr. DeFilippo to be innocent, the burden of proving their guilt beyond a reasonable doubt is on the Government throughout the trial. Mr. Basciano and Mr. DeFilippo never have the burden of proving their innocence or of producing any evidence at all.

6. **Defendants' Right Not to Testify**

The defendants did not testify in this case. Under our constitution, they have no obligation to testify or to present any other evidence because it is the Government's burden to prove their guilt beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to either defendant. A criminal defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendants did not

testify. No adverse inference against either Mr. Basciano or Mr. DeFilippo may be drawn by you because they did not take the witness stand. You may not consider this against the defendants in any way in your deliberations in the jury room.

## 7. Proof beyond a reasonable doubt

For each crime with which the defendants are charged, the Government must prove each element of the crime beyond a reasonable doubt. I will explain the elements of the crimes that the indictment charges later on, but now I shall address the phrase "reasonable doubt."

Proof beyond a reasonable doubt does not mean proof beyond all doubt. The Government is not required to prove a defendant's guilt to a mathematical certainty.

A reasonable doubt is a doubt based on reason and on common sense. This means that if, after you have considered all the of evidence in this case, you have a doubt that is based on your own experience, judgment, and common sense, you must find them not guilty of the crime in question.

A reasonable doubt, however, is not a doubt that arises out of whim or

speculation. Nor is a reasonable doubt an excuse to avoid performing an unpleasant duty.

You should consider each count of the indictment separately. It is thus possible for you to find either defendant guilty on one count with which he is charged and not guilty on another count. Conversely, you might find either defendant guilty of each crime charged in the indictment, or you might find him not guilty of all of the crimes charged in the indictment. Additionally, you may find one of the defendants guilty of one or all of the crimes charged against him in the indictment, and find the other defendant not guilty of all charges.

On any count of the indictment, if, after a fair and impartial consideration of all the evidence, you honestly can say that you have such a doubt as would cause a prudent person to hesitate to act in matters of importance in his or her life, then you have a reasonable doubt. In that event, it is your duty to acquit a defendant on that count.

If, on the other hand, after a fair and impartial consideration of all the evidence, you honestly can say that you have such an abiding belief in a defendant's guilt that you would be willing to act upon a similarly strong conviction in an important matter in your own life, then you have no reasonable

doubt and, in that circumstance, you should convict a defendant on that count.

## 8. Number of Witnesses and Uncontradicted Testimony

The fact that one party called more witnesses and introduced more evidence than the other party does not mean that you should necessarily find the facts in favor of the side offering the most witnesses. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. You also have to decide which witnesses to believe and which facts are true. To do this you must look at all the evidence, drawing upon your own common sense and personal experience.

## 9. The evidence

a. **What is evidence:** I wish to instruct you now as to what is evidence and how you should consider it.

The evidence you will use to decide what the facts are comes in three forms:

(1) sworn testimony of witnesses, both on direct and cross-examination;

(2) exhibits that have been received by the court in evidence;

AND

(3) stipulations.

If evidence was received for a limited purpose you must consider that evidence for that limited purpose only.

**B. What is not evidence:**

When deciding the facts, you must disregard the following things that are not evidence:

(1) arguments or statements by lawyers are not evidence.

(2) questions put to the witnesses are not evidence.

(3) objections to the questions or to offered exhibits are not evidence.

In this regard, attorneys *for both the government and the defendants* have a duty to their clients to object when they believe evidence should not be received. You should not be influenced by the objection or by the court's ruling on the objection. If the objection was sustained, ignore the question and the answer, if an answer was given. If the objection was overruled, treat the answer like any other

answer.

(4) anything you may have seen or heard outside the courtroom is not evidence.

Your verdict must be based solely upon the evidence or lack of evidence developed at trial. You are not to engage in speculation or guesswork.

In reaching your decision as to whether the Government sustained its burden of proof, it would be improper for you to consider any personal feelings you may have about the defendant's race, national origin, ethnic background, sex, or age. All persons are entitled to the presumption of innocence and the Government has the same burden of proof in all criminal cases.

In addition, it would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

Under your oath as jurors you are not to be swayed by sympathy for one side or the other. You are to be guided solely by the evidence in this case, and the crucial, central question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a

reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendants are guilty of the crimes charged solely on the basis of the evidence and subject to the law as I charge you. It must be clear to you that once you let fear, or prejudice, or bias, or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to a defendant's guilt, you must find a verdict of acquittal. But on the other hand, if you should find that the Government has met its burden of proving defendant's guilt beyond a reasonable doubt, you should not hesitate to render a verdict of guilty because of sympathy or any other reason.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

**C. Direct and circumstantial evidence:**

I told you that evidence comes in various forms, such as the sworn testimony of witnesses, exhibits and stipulations.

There are, in addition, different kinds of evidence - direct and

circumstantial.

(1) Direct evidence is the communication of a fact by a witness who testifies to the knowledge of that fact as having been obtained through one of the five senses. So, for example, a witness who testifies to knowledge of a fact because he saw it, heard it, smelled it, tasted it, or touched it is providing direct evidence. As I explained to you in my opening instruction, if you went outside and saw that it was raining, you would have observed "direct evidence" of rain. What remains is your responsibility to pass upon the credibility of the witness who provides the "direct evidence."

(2) Circumstantial evidence is evidence which tends to prove a fact in issue by proof of other facts from which the fact in issue may be inferred.

The word "infer," or the expression "to draw an inference," means to find that a fact exists from proof of another fact. For example, if a fact in issue is whether it is raining at the moment, none of us can testify directly to that fact sitting as we are in this courtroom with the shades drawn. Assume, however, that as we are sitting here, a person walks into the courtroom wearing a raincoat that is dripping wet and carrying an umbrella dripping water. We may infer that it is raining outside. In other words, the fact of rain is an inference that could be drawn

from the wet raincoat and the dripping umbrella. An inference is to be drawn only if it is logical and reasonable to do so. In deciding whether to draw an inference, you must look at and consider all the facts in light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Please bear in mind, however, that an inference is not to be drawn by guesswork, suspicion, or speculation.

I remind you once again that you may not convict a defendant unless you are satisfied of his or her guilt beyond a reasonable doubt, whether based on direct evidence, circumstantial evidence, or the logical inferences to be drawn from such evidence. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more. You are to consider all the evidence in the case, direct and circumstantial, in determining what the facts are and in arriving at your verdict.

## 10. Deciding what to believe

In deciding what the facts are, you must decide which testimony to believe, which testimony not to believe, and how much weight to give to the testimony of each witness. In making those decisions, there are a number of facts you may take

into account, including the following:

A. Did the witness seem to be honest?

B. Did the witness have any particular reason not to tell the truth?

C. Did the witness have a personal interest in the outcome of the case?

D. Did the witness seem to have a good memory?

E. Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

F. Did the witness appear to understand the questions clearly and answer them directly?

G. Was what the witness said supported by other evidence?

H. Did the witness's testimony differ from the testimony of other witnesses?

People sometimes forget things. A contradiction may be an innocent lapse of memory or it may be an intentional falsehood. Consider, therefore, whether the contradiction has to do with an important fact or only a small detail.

Different people observing an event may remember it differently and therefore testify about it differently.

You may consider the factors I have just discussed with you and other relevant factors in deciding how much weight to give to testimony.

Finally, if you find that a witness has lied to you about any matter, however insignificant, you may choose to disregard that witness's testimony in part or in whole.

## 11. <u>Venue</u>

Venue refers to the location of the charged crimes. Each count of the indictment alleges that the crime charged occurred in whole or in part in this judicial district, the Eastern District of New York. The district encompasses the boroughs of Brooklyn, Queens, and Staten Island, as well as Nassau and Suffolk Counties on Long Island. To establish venue for a crime in this district, the Government must prove that some act in furtherance of the crime occurred here. This means that, with respect to all crimes charged, even if other acts were committed outside this district or if the crime was completed elsewhere, venue is established in the Eastern District of New York so long as some act in furtherance of the crime took place in this district. Please note, however, in considering the charges against defendant PATRICK DEFILIPPO, that the defendant PATRICK

DEFILIPPO does not contest that this district is the proper venue for Counts Eight, Nine, and Ten, the charges related to the murder of Gerlando Sciascia and the related gun charge.

Let me further instruct you that, while the Government's burden as to everything else in the case is proof beyond a reasonable doubt, a standard that I have already explained to you, venue need only be proved by the lesser standard of "preponderance of the evidence." To prove something by a preponderance of the evidence means simply to prove that the fact is more likely true than not true. I emphasize that this lesser standard applies only where I specifically mention it in this charge.

## 12. Expert witnesses

You have heard, during the course of this trial, the testimony of several individuals referred to as experts in certain fields. This testimony is what is characterized by lawyers and judges as opinion witness testimony. If scientific, technical, or other specialized knowledge will assist the jury to understand the evidence or to decide a disputed fact, a witness qualified as an expert by knowledge, skill, experience, training, or education, may be called to testify about

such evidence of facts in issue in the form of an opinion.

The rules of evidence ordinarily do not permit witnesses to testify to opinions or conclusions. An exception to this rule exists for those we call expert witnesses who may state their opinions and who may also state the reasons for their opinion.

You should consider the experts' opinions and give them such weight as you may think it deserves in the light of all the evidence in the case. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely. You should not accept a witness' testimony merely because he or she is an expert nor should you substitute it for your own reason, judgment or common sense.

In short, the expert witnesses are in all other respects the same as any other witness. You should consider their qualifications, experience, interest in the outcome of the case, if any, demeanor, and all the other factors you have been instructed to consider in assessing the credibility of a witness.

## 13. Interest in outcome

In evaluating the credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of the case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide what extent, if at all, the witness's interest has affected his or her testimony.

## 14. All available witnesses need not be produced

The law does not require the Government to produce all available evidence or to call as witnesses all persons involved in the case who may have been present at any time or place, or who may appear to have some knowledge of the matter in

issue at this trial. Nor does the law require any party to produce as exhibits all papers and objects mentioned during the course of the trial.

## 15. Similar Acts

Throughout this trial you have heard substantial evidence that the defendants engaged in conduct that was similar in nature to the conduct charged in the Indictment. I gave you a limiting instruction concerning evidence of this nature during the trial, and I will repeat it for you now. The defendants are only on trial for committing the acts alleged in the Indictment. Accordingly, you may not consider evidence of similar acts as a substitute for proof that a defendant you are considering committed the crime charged. Indeed, even if you believe, for example, that the Government proved beyond a reasonable doubt, that one or both of the defendants committed one or more of these similar acts, you cannot find the defendants guilty of the charges in the Indictment upon that evidence alone.

Nor may you consider this evidence as proof that a defendant you are considering has a criminal propensity or bad character. The evidence of other similar acts was admitted for much more limited purposes and you may consider it only for those limited purposes. This evidence was admitted as background evidence to show the development of relationships of trust between the defendant

and the Government's witnesses, to provide background evidence of the charged enterprise, and to corroborate the testimony of the Government's witnesses.

If you determine that the defendant you are considering committed the acts charged in the Indictment and the similar acts as well, then you may, but you need not, draw an inference that in doing the acts charged in the Indictment, the defendant acted knowingly and intentionally, and not because of some mistake, accident, or other reason.

Remember, however, that evidence of similar conduct is to be considered by you only on the issues I have just mentioned, and not on any other issue. You may not consider such evidence for any other purpose. Specifically, you may not consider it as evidence that the defendant you are considering is of bad character or has a propensity to commit crimes.

## 16. Failure to Use Specific Investigative Techniques

You heard testimony of witnesses and argument by counsel that the Government did not utilize specific investigative techniques. You may consider this in deciding whether the Government has met its burden of proof because you

should look to all of the evidence or lack of evidence in deciding whether a defendant is guilty or not guilty of a particular charge. I charge you, however, that there is no legal requirement that the Government use any specific investigative techniques to prove its case. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all of the evidence in the case, the Government has proven that the defendant is guilty beyond a reasonable doubt as to each count charged against him.

## 17. **Audio Recordings and Transcripts**

You have heard evidence in the form of tape recordings of conversations which were obtained without the knowledge of some of the parties to those conversations. These tape and video recordings were obtained lawfully. The use of this procedure to gather evidence is perfectly lawful and the Government has the right to use such evidence in this case.

During the course of the trial you were given transcripts to assist you in listening to those recordings. The transcripts themselves are not evidence. If the transcripts appeared to you to vary from the tapes in any respect, what you heard is controlling.

**18. Stipulations**

The attorneys for United States and for the defendants have entered into stipulations concerning facts which are relevant to this case. When the attorneys on both sides stipulate and agree as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.

**19. Dates Approximate**

The indictment charges "in or about" and "on or about" and "between" certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the dates alleged.

**20. Judicial Notice**

I have taken judicial notice of certain facts which I believe are not subject to reasonable dispute. I have accepted these facts to be true, even though no evidence has been introduced proving them to be true. You may, but are not

required to agree that these facts are true. You should disregard any instructions to the contrary that previously have been given during trial.

## 21. Punishment

The question of possible punishment of either defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing a sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case, and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of the evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon a defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, to enter into your deliberations.

## 22. Interviews of Witnesses

There was testimony at trial that the attorneys for the Government interviewed witnesses when preparing for and during the course of the trial. You should not draw any unfavorable inference from that testimony. To the contrary,

the attorneys were obliged to prepare this case as thoroughly as possible and might have been derelict in the performance of their duties if they failed to interview witnesses before this trial began and as necessary throughout the course of the trial.

**23. Impeachment by Prior Felony Conviction - Non Defendant**

You have heard the testimony of witnesses who were previously convicted of a crime, punishable by more than one year in jail. These prior convictions were put into evidence for you to consider in evaluating the witness' credibility. You may consider the fact that the witnesses who testified are convicted felons in deciding how much of their testimony to accept and what weight, if any, it should be given.

**24. Accomplices Called by The Government**

You have heard witnesses who testified that they were actually involved in planning and carrying out certain crimes with the defendants. There has been a great deal said about these so-called accomplice witnesses in the summations of

counsel and about whether or not you should believe them.

The Government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For those very reasons, the law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe. I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of accomplice witnesses.

You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by

testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause them to lie, or was it one which would cause them to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.

## 25. Punishment of Accomplice Witnesses

The cooperating witnesses in this case have been promised that if they testify truthfully, completely, and fully, they will receive a 5K1.1 or Rule 35 letter from the Government. Upon such a motion by the Government stating that a defendant has provided substantial assistance in the investigation or prosecution of another person who has committed a crime, the court may impose sentences below the minimum recommended sentence or the statutory sentence. Two factors to keep in mind are: (1) only the Government can make such a motion and it cannot be compelled to do so; and (2) the court has complete discretion as to whether it will or will not grant that motion and is free, in any event, to impose any sentence

within the minimum and maximum set forth in the controlling statute. The final determination as to the sentence to be imposed rests with the court.

## 26. Discrepancies in testimony

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict themself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance. A willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in their or her testimony. You should, as always, use common sense and your own good judgment.

## 27. Other Persons Not on Trial

You have heard evidence about the involvement of certain other people in the transactions referred to in the indictment. You may not draw any inference, favorable or unfavorable, towards the Government or the defendants from the fact that certain persons are not on trial before you. That these individuals are not on trial before you is not your concern. You should neither speculate as to the reason these people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case. Nor should you draw any inference from the fact that any other person is not present at this trial. Your concern is solely the defendants on trial before you.

## 28. Testimony of Government Agents

During the trial, you have heard testimony from Government employees and

police officers. Because a witness may be a Government employee does not mean that their or her testimony is entitled to any greater weight by reason of their or her employment. By the same token, his or her testimony is not entitled to less consideration simply because he or she is a Government employee. You should consider the testimony of Government agents and police officers just as you would consider any other evidence in the case and evaluate their credibility just as you would that of any other witness. After reviewing all the evidence, you will decide whether to accept the testimony of law-enforcement witnesses, and what weight, if any, that testimony deserves.

## 29. Duty to Consider Only These Defendants

You are about to be asked to decide whether or not the Government has proven beyond a reasonable doubt the guilt of these defendants. You are not being asked whether any other person has been proven guilty. Your verdict should be based solely upon the evidence or lack of evidence as to these defendants, in accordance with my instructions and without regard to whether the guilt of other people has or has not been proven.

## Part II

I now will turn to the second part of this jury charge where I instruct you as to the legal elements of the crimes charged.

### 1. Knowingly, Wilfully and Intentionally

During these instructions, you will hear me use the words "knowingly," "wilfully" and "intentionally" from time to time.

#### (a) Knowingly

Certain allegations in the indictment require that in order to sustain its burden the proof, the Government must prove that a person acted knowingly. A person acts knowingly if he acts purposely and voluntarily and not because of a mistake, accident or other innocent reason. Whether the defendant acted knowingly may be proven by a defendant's conduct and by all of the facts and circumstances surrounding the case.

#### (b) Wilfully

Certain allegations in this indictment require that in order to sustain its burden of proof, the Government must prove that the defendant acted willfully. "Willfully" means to act with knowledge that one's conduct is unlawful and with

the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law. The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.

(c) **Intentionally**

Certain allegations in the indictment require that in order to sustain its burden of proof the Government must prove beyond a reasonable doubt that the defendant acted intentionally. Before you can find that the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully. A defendant need not have been aware of the specific law or rule that his conduct may have violated, but his acts must not have been the product of a mistake or accident.

These issues of knowledge, willfulness and intent require you to make a determination about the defendant’s state of mind, something that rarely can be proved directly. A wise and careful consideration of all the circumstances of the case may, however, permit you to make such a determination as to the defendant's state of mind. Indeed, in your everyday affairs, you frequently are called upon to determine a person’s state of mind from his or her words and actions in a given circumstance. You are asked to do the same here.

## 2. <u>Definition of Conspiracy</u>

Before turning to the specific charges in the Indictment, I wish to discuss with you the definition of conspiracy. As you will see, the Indictment alleges that the defendants conspired to commit particular crimes under federal law, namely racketeering, extortionate collection of credit, illegal gambling and murder in aid of racketeering. Further, three of the racketeering acts charged in the Indictment allege a conspiracy under New York state law and two of the racketeering acts charged in the Indictment allege a conspiracy under federal law. A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose. It is sometimes referred to as a criminal partnership. The crime of conspiracy is an offense separate from the crime the alleged conspirators intend to commit. The formation of a conspiracy, or, as it is frequently described, a partnership for criminal purposes, is in and of itself a crime. Congress and the New York state legislature deemed it appropriate to make a conspiracy a separate crime even if the conspiracy did not succeed. That is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture. Thus, if a conspiracy exists, even if it should fail to achieve its purpose, it is still punishable

as a crime. The essence of the charge of conspiracy is an understanding among two or more persons that they will act together to accomplish a common objective that they know is unlawful.

### a. Conspiracy Under Federal Law

There are three elements of the federal crime of conspiracy:

**First**, it must be proved that two or more persons entered into the particular unlawful agreement charged in the conspiracy count or racketeering act that you are considering;

**Second**, it must be proved that the defendant under consideration knowingly and intentionally became a member of the conspiracy;

**Third**, as to some, but not all, of the conspiracy charges in the Indictment, it must be proved that at least one overt act to further some objective of the conspiracy was committed by at least one of the conspirators.

A conspiracy is a combination or agreement between two or more persons to accomplish some unlawful purpose. The gist or essence of the conspiracy is the unlawful agreement to violate the law. A conspiracy is sometimes referred to as a partnership in criminal purposes in which each member of the conspiracy becomes

the agent of every other.

To establish a conspiracy, the Government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator. It would be extraordinary if there were such a formal document or specific oral agreement. Common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding. A conspiracy, by its very nature, is almost invariably secret in both origin and execution. Therefore, it is sufficient for the Government to show that the conspirators somehow came to a mutual understanding toaccomplish an unlawful act by means of a joint plan or common scheme. Moreover, since a conspiracy is, by its very nature, characterized by secrecy, you may infer its existence from the circumstances of the case and the conduct of the parties involved.

It is not necessary for the Government to prove that the ultimate objectives of the conspiracy were successfully accomplished. It is enough if the Government has proved that two or more persons -- in any way, expressly or impliedly – came

to a common understanding to violate the law. If, upon considering all the evidence, direct and circumstantial, you are satisfied beyond a reasonable doubt that the minds of at least two of the alleged conspirators met in an understanding way and that they agreed to work together to accomplish the object of the charged conspiracy, then the first element -- the existence of the conspiracy -- has been established.

The second element requires that the Government prove beyond a reasonable doubt that the defendant under consideration knowingly, willfully and voluntarily became a participant in or a member of the conspiracy. An individual may become a member of the conspiracy without full knowledge of all the details of the conspiracy.

Before you may find that a defendant was a member of the conspiracy, the evidence must first show beyond a reasonable doubt that the conspiracy was knowingly formed, and that the defendant under consideration you are considering knowingly participated in the unlawful plan, with knowledge of its unlawful purpose and with the intent to advance or further some objective or purpose of the conspiracy.

An act is done "knowingly" if it is done voluntarily and intentionally, and

not because of a mistake or accident or other innocent reason. A person acts "intentionally" if he acts with the specific intent to do something the law forbids. The person need not be aware of the specific law or rule that his conduct may be violating but he must act with a specific intent to do whatever it is the law forbids.

One who intentionally joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy.

Before you can find that the defendant under consideration was a member of the conspiracy, you must find that he deliberately and intentionally joined the conspiracy and participated in it – meaning, he had a specific intent to do something the law forbids. In determining intent, it is impossible to look into a person's mind. Thus, intent must be inferred from conduct, from the surrounding circumstances, and from all the evidence in the case.

The mere fact that a defendant was seen with one of the conspirators, associated with them, or was related to or had a friendship with one of them, is by itself not enough to make him a conspirator. I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. More is required under the law. What is necessary is that a defendant

must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful objectives.

However, although mere presence or mere association with conspirators is not enough, it is a factor that you may consider, among others, to determine whether a defendant was a member of a conspiracy. That is, a defendant's presence may establish his membership in a conspiracy if all the circumstances, considered together, show that his presence was meant to advance the goals of that conspiracy. In other words, presence itself demonstrates membership in a conspiracy only if that presence is a functional part of the conspiracy. Thus, if a defendant with an understanding of the unlawful character of his plan knowingly encourages, advises or assists, for the purpose of furthering the undertaking or scheme, he thereby becomes an intentional participant, or a conspirator.

The extent of a defendant's participation in the conspiracy has no bearing on his guilt or innocence. Even if a defendant participated in a conspiracy to a degree more limited than that of another, he is equally culpable, so long as you find, beyond a reasonable doubt, that he deliberately and intentionally became a member of the conspiracy and participated in it. A conspirator's liability is not

measured by the extent or duration of his participation in the conspiracy. Further, it is not required that a person be a member of the conspiracy from its very start. Indeed, each member may perform separate and distinct acts and perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

In that connection, I also instruct you that to become a member of the conspiracy, a defendant need not have known the identities of each and every other member, nor need he have been appraised of all of their activities. Moreover, a defendant need not have been fully informed as to all of the details or the full scope of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant under consideration need not have joined in all of the conspiracy's unlawful objectives.

Unless you are otherwise instructed,the government must prove a third element, to wit, an overt act for the purposes of carrying out the unlawful agreement. I will instruct you as to which conspiracy charges have an overt act requirement. This element requires that the Government must prove beyond a reasonable doubt that at least one of the overt acts charged in the indictment was

knowingly committed by at least one of the conspirators, at or about the time and place alleged, and that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the Government to satisfy this element, it is not required that all of the overt acts alleged in the indictment be proven. Similarly, you need not find that the defendant under consideration in this case committed the overt act. It is sufficient for the Government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

In order for the Government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the indictment. In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which, in and of itself is criminal or constitutes an objective of the conspiracy.

You will recall that I have admitted into evidence against the defendant under consideration the acts and statements of others because these acts and statements were committed by persons who, the Government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against the defendant under consideration has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

If you find, beyond a reasonable doubt, that the defendant under consideration whose guilt you are considering was a member of the conspiracy charged in the indictment, then, any acts done or statements made in furtherance of

the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that defendant. This is so even if such acts were done, and statements were made, in the defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, however, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

### b. Conspiracy Under New York State Law

I'd also like to point out that in several of the individual racketeering acts charged in the Indictment, the Government has charged the defendants with conspiracy to commit murder under New York State law.

As under federal law, conspiracy to commit a crime under New York Penal Law constitutes a distinct offense separable from the consummated crime, and is

not merged into the completed crime. The essence of conspiracy, again, is an agreement or plan among two or more people to commit some crime in the future.

In order to prove that a defendant committed the crime of conspiracy under New York State law, the Government must establish the following three elements beyond a reasonable doubt:

**First**, that there was a meeting of the minds between two or more people, or an agreement or plan, either express or implied;

**Second**, that those agreeing have a common corrupt intent to commit an unlawful act; and

**Third**, that there is at least one overt act committed on the part of at least one of the conspirators in furtherance of the corrupt agreement.

A conspiracy can be likened to a partnership with a criminal purpose, in which each member becomes the agent of every other member. However, express language or specific words are not required to indicate the assent or the attachment of the defendant under consideration to a conspiracy. As under federal law, assent or agreement can be inferred either directly by acts or circumstantially.

Under New York State law, an overt act is any step, action or conduct which is taken to achieve or further the objective of the conspiracy. In fact, the overt act

itself need not be criminal nor need it be the very crime which is the purpose of the conspiracy. An overt act, therefore, is one which is committed or caused to be committed by any member of the conspiracy in an effort to accomplish some objective or purpose of the conspiracy.

Only one overt act must be found to prove the existence of the conspiracy. It is not necessary that each member of the conspiracy committed or participated in that overt act. Rather, in the eyes of the law, the act of one member of a conspiracy becomes the act of all members. Thus, proof of an overt act by only one of the coconspirators is sufficient. In other words, so long as you all agree that one of the conspirators committed any overt act in order to accomplish one of the objectives of the conspiracy, the overt act element of the crime is satisfied. All that is required is that you all agree that the same overt act was committed.

Again, as under federal law, you must also find beyond a reasonable doubt that the defendant you are considering had criminal intent. A person acts intentionally with respect to a result or to conduct when his conscious aim is to cause such result or engage in such conduct. Intent is a subjective element, and may be determined by considering all of the facts and circumstances leading up to, surrounding, and following the events in question. Thus, you may know a person's

intent by his acts and words, and you may examine any factors that you consider to be relevant, such as motive, location, or timing. In determining whether the defendant under consideration became a member of the conspiracy, you must determine not only whether he intended that criminal acts be performed, but whether he joined the conspiracy with knowledge of the unlawful purposes. You must ask yourselves whether this defendant joined the conspiracy with awareness of at least some of the basic aims, activities, actors, or goals of the conspiracy. A defendant need not be aware of all of the illegal purposes of the conspiracy or the full extent of its activities or the identities of all other members in order to be considered a member of that conspiracy.

It is also not required that a person be a member of a conspiracy from its very inception. He may join it at any point during its progress and be held responsible for all that has gone on before he joined and all that may be done thereafter, so long as he remained a member of the conspiracy.

### 3. Definition of Aiding and Abetting

Before turning to the specific charges in the Indictment, I wish to discuss with you the definition of aiding and abetting. As you will see, the Indictment alleges that the defendants aided and abetted the commission of particular crimes

under federal law, namely illegal gambling, attempted murder, extortionate extension of credit, murder, solicitation to murder and use of a firearm during a crime of violence. Further, several of the racketeering acts in the Indictment allege aiding and abetting under either New York state law or under federal law.

### a. Aiding and Abetting Under Federal Law

The aiding and abetting statute, Section 2 of Title 18 of the United States Code, provides that:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

This means that if you find that a defendant knowingly and willfully aided and abetted another person in the commission of a crime, he is as guilty as if he personally committed it.

Before you can convict a defendant on the ground that he aided and abetted the commission of the crimes charged, you must first find that another person committed that crime.

Obviously, no one can be convicted of aiding and abetting the criminal acts

of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must determine whether the defendant you are considering aided or abetted the commission of that crime.

In order for a defendant to be guilty of aiding and abetting, it is necessary that there be more than mere presence at the scene of the occurrence or knowledge that a crime is being committed and acquiescence in the crime itself. A defendant must have willfully associated himself in some way with the criminal venture and must have willfully participated in it as something he wanted to bring about. That is, a defendant must willfully seek by some act to make the criminal venture succeed. A person acts willfully if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids. Mere presence or relationship to the person who actually committed the crime even coupled with knowledge that a crime was committed is not enough.

**b. Aiding and Abetting Under New York Law**

The relevant New York State statute on aiding and abetting is Section 20.00 of the New York Penal Law, which provides, in pertinent part:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such

person to engage in such conduct.

Thus, one charged with aiding and abetting a crime may be liable for the crime even if he himself does not commit the actual crime charged. The second person is "criminally liable" for the conduct of a person who commits a criminal act if that second person acts with the intention that the crime be committed and solicits, requests, commands, induces, importunes, or intentionally aids another to commit the crime. If the Government establishes criminal intent, the common purpose, and a solicitation, request, command, inducement, importuning or intentional aid to the actual commission of the crime on the part of the defendant, that defendant is equally liable for the criminal act.

One who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself. Therefore, to summarize my instructions, before you can find a criminal charge proven on a theory of aiding and abetting, you must first find that the crime was actually committed by someone, that the defendant must have willfully associated himself in some way with the criminal venture, and must have willfully participated in it as something he wanted to bring about.

## 4. <u>Substantive Charges</u>

I will now review the indictment with you and instruct you as to the legal elements of the crimes with which the defendants are charged. Mr. Basciano and Mr. DeFilippo have been charged with:

### Count One
### <u>Racketeering Conspiracy</u>

Count One of the Indictment charges that:

> In or about and between January 1979 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, being persons employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violated Title 18, United States Code, Section 1982(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

The relevant statute is commonly referred to as the RICO statute. 18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate 18 U.S.C. § 1962(c), which in turn provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly,

> in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

I will now instruct you on the elements of the charged RICO conspiracy offense. In order to convict a defendant on the RICO conspiracy offense charged in Count One, the Government must prove <u>all</u> of the following four elements beyond a reasonable doubt:

<u>One:</u> That an enterprise existed as alleged in the Indictment;

<u>Two</u>: That the enterprise was engaged in, or its activities had an effect upon interstate or foreign commerce;

<u>Three</u>: That the defendant was employed by or associated with the enterprise.

<u>Four</u>: That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity;

I will now instruct you on the law applicable to each of these four essential elements.

**<u>The First Element: The "Enterprise"</u>**

To prove the RICO conspiracy offense charged in Count One, the Government must prove beyond a reasonable doubt that if the RICO conspiracy offense were completed as contemplated, an enterprise would be established. As used in these instructions, the term "enterprise" "includes any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

The term "enterprise" as used in these instructions may include a group of people associated in fact, even though this association is not recognized as a legal entity. Thus, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals. A group or association of people can be an "enterprise" if these individuals have "associated together for a common purpose of engaging in a course of conduct."

Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit. Therefore, in order to establish that an enterprise would be established if the RICO conspiracy offense were completed as contemplate, the Government must prove that: (1) there would be an ongoing organization with some sort of framework for making or carrying out decisions; and (2) the various members and associates of the association would function as a continuing unit to achieve a common purpose.

Regarding "organization," it is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its

members would function and operate in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise.

"Continuing membership" exists even where the membership changes by adding or losing individuals during the course of its existence. Therefore, such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by adding or losing individuals during the course of its existence.

In this case, both defendants have stipulated that the enterprise charged in the Indictment, the Bonanno organized crime family of La Cosa Nostra, also known as the Massino family, existed on or about the time period alleged in the Indictment. You may therefore accept this stipulation as evidence and regard this element as proved.

**The Second Element: Engaging In or The Effect on Interstate or Foreign Commerce**

As I stated previously, the Government must prove beyond a reasonable doubt that the RICO enterprise would be engaged in, or its activities would affect, interstate or foreign commerce. Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business or travel between the United

States and another country. Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia or between the United States and another country. This may include, among other matters, the purchase or sale of goods or supplies from outside the United States or the state in which the enterprise was located, the use of interstate or international mail or wire facilities, or the causing of any of those things.

An enterprise "is generally 'engaged in commerce' when it is itself directly engaged in the production, distribution or acquisition of goods or services in interstate commerce." If you find that the evidence is sufficient to prove that the enterprise would be "engaged in" interstate commerce or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the Government is not required to prove the alternative that the activities of the enterprise would have affected interstate or foreign commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the Government is not required to prove a significant or substantial effect on interstate or foreign commerce. Rather, a minimal effect on interstate or foreign commerce is sufficient.

It is not necessary for the Government to prove that the individual racketeering acts themselves would have affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect. On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

Moreover, it is not necessary for the Government to prove that the defendant knew that the enterprise would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that each defendant engaged in, or his activities affected, interstate or foreign commerce.

In this case, both defendants have stipulated to the fact that the enterprise, the Bonanno organized crime family of La Cosa Nostra, also known as the Massino family, engaged in or its activities affected interstate or foreign commerce. You may therefore accept this stipulation as evidence and regard this element as proved.

**<u>The Third Element: Defendant Was Employed By or Associated With the Enterprise</u>**

The third element the Government must prove beyond a reasonable doubt is that the defendant would be "employed by" or "associated with" the enterprise about which I have already instructed you. The Government need not prove both, either one is sufficient to establish this element. The term "employed by" should be given its common, plain meaning. Thus, a person is "employed by" an enterprise when, for example, he is on the payroll of the enterprise and performs services for the enterprise, holds a position in the enterprise, or has an ownership interest in the enterprise.

"Associated with" also should be given its plain meaning. As stated in Webster's Third New International Dictionary (1971 ed.), "associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another." Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.

It is not required that the defendant would have been "employed by" or "associated with" the enterprise for the entire time the enterprise existed. The

Government also is not required to prove that the defendant would have had a formal position in the enterprise, or would have participated in all the activities of the enterprise, or would have had full knowledge of all the activities of the enterprise, or would have knew about the participation of all the other members of the enterprise. Rather, it is sufficient that the Government prove beyond a reasonable doubt that if the RICO conspiracy offense were completed as contemplated, the defendant would have been "employed by" or "associated with" the enterprise within the meaning of those terms as I have just explained and that he knew of the general nature of the enterprise, and that the enterprise extended beyond his own role in the enterprise.

In this case, both defendants have stipulated that they were employed by or were associated with the enterprise, the Bonanno organized crime family of La Cosa Nostra, also known as the Massino family, as charged in the Indictment. You may therefore accept this stipulation as evidence and regard this element as proved.

**The Fourth Element: Agreed to Conduct or Participate in the Conduct of the Affairs of the Enterprise Through A Pattern of Racketeering Activity**

The fourth element the Government must prove beyond a reasonable doubt is that the defendant knowingly agreed to conduct or participate, directly or

indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity. It is not necessary, in order to convict a defendant of a charge of RICO conspiracy, that the objectives or purposes of the conspiracy, whatever they may be, have been achieved or accomplished. The ultimate success or failure of the conspiracy is irrelevant.

Rather, the agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense. The jury may find that a defendant has entered into the requisite agreement to violate RICO when the Government has proven beyond a reasonable doubt that the defendant agreed with at least one other coconspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise.

The Government is not required to prove that each defendant personally committed two racketeering acts, or that each defendant agreed to personally commit two racketeering acts. Rather, the Government must prove beyond a reasonable doubt that each defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy (which could be the defendant himself) would commit at least two predicate racketeering acts in the conduct of affairs of the enterprise.

For the purposes of this count, the Indictment alleges that the racketeering acts alleged in Count One were or were intended to be committed as part of the conspiracy. The Government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy, although it need not prove that each defendant committed or agreed to commit any of these acts as long as the Government proves that each defendant participated in some manner in the overall objective of the conspiracy.

You may not find a defendant guilty unless you all agree unanimously that the defendant agreed with another coconspirator that at least two particular racketeering acts would be committed. It is not enough that you all believe that there was an agreement that two racketeering acts would be committed. That is, for example, you cannot find a defendant guilty if some of you think that the defendant agreed that only Racketeering Acts One and Two would be committed and the rest of you think that only Racketeering Acts Three and Four would be committed. In order to convict a defendant you must find the element of agreement; you must all believe that defendant agreed with another that at least the same two specific racketeering acts would be committed.

To establish the requisite conspiratorial agreement, the Government is not

required to prove that each coconspirator explicitly agreed with every other coconspirator to commit the substantive RICO offense, or knew all his fellow conspirators or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only required that the defendant know the general nature and common purpose of the conspiracy and that the conspiracy extends beyond his individual role. Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy, may be inferred from circumstantial evidence.

For example, when the evidence establishes that the defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, the jury may infer the existence of the requisite agreement to commit a RICO offense. However, it is for the jury to determine whether, based on the entirety of the evidence, the Government has proven that the defendant entered into the required conspiratorial agreement.

Furthermore, it is not necessary that the Government prove that a particular defendant was a member of the conspiracy from its beginning. Different persons may become members of the conspiracy at different times. If you find that there is

a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

Before you may consider the statements or acts of a coconspirator in deciding the issue of a defendant's guilt, however, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, that is they were done or said before the conspiracy began or after it ended, they may be considered by you as evidence only against the member who did or said them.

Also understand that a defendant may be convicted as a conspirator even though he or she plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed, and that the defendant

knowingly participated in the conspiracy with the intent to assist other conspirators in accomplishing its objective or objectives.

Nevertheless, the defendant must knowingly agree to facilitate a scheme which, if completed, would have involved at least one conspirator who would participate in the operation and management of the enterprise. Such proof may include evidence that the conspirator would have performed acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise. Thus, the Government must prove that the at least one conspirator would have participated in the operation or management of the enterprise itself or that he would have had some part in directing the enterprise's affairs. However, the Government need not prove that the conspirator would have exercised significant control over or within the enterprise, or that he would have had a formal position in the enterprise, or that he would have had primary responsibility for the enterprise's affairs. Rather, "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management" or carry out upper management's orders. Therefore, you may find guilty "all who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers." An enterprise also might

be operated or managed by one "who exerts control over [the enterprise]."

Thus, to find this element proven, you must find that a defendant has entered into the requisite agreement to violate RICO if the Government has proven beyond a reasonable doubt that the defendant agreed with at least one other coconspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise.

**Pattern of Racketeering Activity**

As I have stated, the Government must prove beyond a reasonable doubt that the defendant engaged in a pattern of racketeering activity.

The Indictment alleges the commission of several Racketeering Acts by one or both of the defendants, including illegal gambling – policy operation, illegal gambling – joker poker operation, conspiracy to murder, attempted murder, illegal gambling – bookmaking, extortionate extension of credit, extortionate collection of credit conspiracy, murder and solicitation to murder. To establish a "pattern of racketeering activity," as alleged in Count One of the indictment, the Government must prove three elements beyond a reasonable doubt:

First: The defendant intentionally committed, or caused, or aided and abetted the commission of, two or more of the racketeering acts alleged in the indictment. These

two or more racketeering acts must have been committed within ten years of each other. However, in considering this ten year period, the period between January 15, 1988 and January 3, 1989, which is 353 days, and the period between August 31, 1991 and October 17, 1991, which is 47 days, or a total of 400 days, are not counted for defendant VINCENT BASCIANO; for example, a racketeering act allegedly committed on January 1, 1988 by this defendant may be considered to be within ten years of another alleged racketeering act committed on February 4, 1999. Your verdict must be unanimous as to which specific racketeering acts you find that a particular defendant committed, caused or aided and abetted. Shortly, I will instruct you on the elements regarding each of the charged racketeering acts.

<u>Second</u>: The racketeering acts are "related;" that is, have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts may be “related” even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or

involvement in or control over its affairs, or by evidence that the racketeering act benefited the enterprise, or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

Third: The racketeering acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity. The Government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways. For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the Government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

With respect to venue, which I have previously instructed you on, to establish

venue for the Count One Racketeering Conspiracy count, the government need only prove by a preponderance of the evidence, that some member of the charge conspiracy committed an act relating to the enterprise within the Eastern District of New York. The Government need not prove that each of the charged racketeering acts occurred within the Eastern District of New York, only that a member of the charged conspiracy committed some act related to the conspiracy within the Eastern District of New York. To prove something by a preponderance of the evidence means simply to prove that the fact is more likely true than not true.

**Racketeering Act One**
**Illegal Gambling – Policy Operation**

In Racketeering Act One the defendant VINCENT BASCIANO is charged with illegal gambling under Section 1955 of Title 18 of the United States Code and alternatively, aiding and abetting illegal gambling under Section 2 of Title 18 of the United States Code. The charge reads:

> In or about and between January 1979 and January 2003, both dates being approximate and inclusive, within the Southern and Eastern Districts of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving policy, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(2) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of

> the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

Illegal Gambling

In order to prove that the defendant conducted an illegal gambling business under federal law, the Government must prove beyond a reasonable doubt each of the following three elements of the crime:

> First, that the gambling business charged in the Indictment violated the laws of the state of New York;
>
> Second, that the gambling business was in substantially continuous operation for a period in excess of thirty days or had gross revenues of $2,000 or more in any one day; and
>
> Third, that five or more persons, including the defendant, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

First Element

The first element the Government must prove beyond a reasonable doubt is that the gambling business charged in the Indictment violated the laws of the state of New York.

The Indictment charges that the gambling business in question involved a policy operation. To prove this element the Government must prove that the business violated New York law.

“Policy” means a form of lottery in which the winning chances or plays are not determined upon the basis of a drawing or other act on the part of persons conducting or connected with the scheme, but upon the basis of the outcome or outcomes of a future contingent event or events otherwise unrelated to the particular scheme.

Under § 225.05 of the Penal Law of New York State, a person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity. "Unlawful" means not specifically authorized by law.

A person "advances gambling activity" when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes, but is not limited to, conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefore, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

A person also advances gambling activity when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its

occurrence or continuation.

A person "profits from gambling activity" when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates in the proceeds of gambling activity.

A person engages in gambling activity when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain gambling outcome. Moreover, “something of value” is defined to include “any money or property.”

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.

Based upon these definitions, I instruct you that a policy operation constitutes a form of illegal gambling in violation of New York State law and Title 18, United States Code, Section 1955.

<u>Second Element</u>

The second element the Government must prove beyond a reasonable doubt is that the gambling business was in substantially continuous operation for a period in excess of

thirty days.

To establish this element, the Government is not required to prove that the business operated on an everyday basis throughout the entire period. Instead, the Government must prove that over some period in excess of thirty days, the gambling business was conducted with sufficient regularity that it existed as an ongoing business rather that as a casual non-business activity. The Government is not required to prove that the defendant knew that the business was in substantially continuous operation.

It is for you to determine the specific period when the business was in substantially continuous operation. If that period was thirty days or less, then you should acquit the defendant. If it was longer than thirty days, then you should go on to the next element.

Another theory by which the Government may establish the second element is by proving beyond a reasonable doubt that the gambling business had gross revenues of $2,000 or more in any one day.

For the purposes of this element, gross revenues means the total amount wagered in one day regardless of how much was paid out to bettors as winnings. The Government is not required to prove that the defendant knew that the business had gross revenues of $2,000 or more in any one day.

Third Element

The third element the Government must prove beyond a reasonable doubt is that five or more persons, including the defendant, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business during the period when you found it was in substantially continuous operation.

The terms "financed," "managed," "supervised," "directed" and "owned" should be given their everyday, ordinary meanings. However, I would like to explain the term "conducted" in more detail.

To conduct a gambling business means to perform any act, function or duty which is necessary or helpful in the regular operation of the business. You may find that a person conducted the gambling business even though he or she was a low-level employee having no part in the management or control of the business and no share in its profits. This includes any employee who was directly involved in gambling activity, like dealers and shufflers, or anyone who knowingly assisted in the operation of the gambling business, like waitresses and security guards. However, someone whose only involvement with the business was as a customer or bettor is not conducting the business and cannot be counted as one of the five.

Five or more people, including the defendant, must have participated during the

period you found that the gambling business was in substantially continuous operation. The Government does not have to prove that all five were engaged at any particular time in conducting the business, as long as it proves that all five participated in the business during the period you identified. It is not required that all five be charged in the indictment.

Each of the five persons must have knowingly participated in the business. This means that they knew that they were involved in conducting a gambling business, and were not involved by accident, negligence or mistake. The Government does not have to prove that defendant knew that the gambling business was illegal.

<u>Aiding and Abetting</u>

As I previously mentioned, Racketeering Act One is also charged under an aiding and abetting theory, that is that the defendant aided and abetted the operation of the illegal gambling operation charged in Racketeering Act One. Therefore, you may find Racketeering Act One proven if you find that the defendant aided and abetted the operation of the illegal gambling operation charged.

I previously instructed you on the law of aiding and abetting. To reiterate, if you find that a defendant knowingly and willfully aided and abetted another person in the commission of a crime, he is as guilty as if he personally committed it. Before you can

convict a defendant on the ground that he aided and abetted the commission of the crimes charged, you must first find that another person committed that crime. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must determine whether the defendant you are considering aided or abetted the commission of that crime.

In order for a defendant to be guilty of aiding and abetting, it is necessary that there be more than mere presence at the scene of the occurrence or knowledge that a crime is being committed and acquiescence in the crime itself. A defendant must have willfully associated himself in some way with the criminal venture and must have willfully participated in it as something he wanted to bring about. That is, a defendant must willfully seek by some act to make the criminal venture succeed. A person acts willfully if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids.

Mere presence or relationship to the person who actually committed the crime even coupled with knowledge that a crime was committed is not enough.

To summarize, you may not find the defendant guilty of this racketeering act unless you find beyond a reasonable doubt that every element of the crime charged as I

explained those elements to you, was committed by someone and that the defendant willfully participated in its commission.

In short, if you are satisfied beyond a reasonable doubt that the defendant himself knowingly and willfully committed the crime charged in Racketeering Act One or aided abetted, counseled, commanded, induced, or procured the commission of that crime by someone else, then you should find Racketeering Act One proven. On the other hand, if the Government has not satisfied you beyond a reasonable doubt that the defendant either knowingly and willfully committed the crime charged in Racketeering Act One or aided or abetted the commission of that crime, then you must find him not guilty of the crime charged in Racketeering Act One.

**Racketeering Act Two**
**<u>Illegal Gambling – Joker Poker Machines</u>**

In Racketeering Act Two the defendants VINCENT BASCIANO and PATRICK DEFILIPPO are charged with illegal gambling under Section 1955 of Title 18 of the United States Code and alternatively, aiding and abetting illegal gambling under Section 2 of Title 18 of the United States Code. The charge reads:

> In or about and between January 1979 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO and PATRICK DEFILIPPO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal

> gambling business, to wit: a gambling business involving the use of joker poker type gambling machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.30(2) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

<u>Illegal Gambling</u>

As I instructed you previously with respect to Racketeering Act One, in order to prove that the defendant conducted an illegal gambling business under federal law, the Government must prove beyond a reasonable doubt each of the following three elements of the crime:

<u>First</u>, that the gambling business charged in the Indictment violated the laws of the state of New York;

<u>Second</u>, that the gambling business was in substantially continuous operation for a period in excess of thirty days or had gross revenues of $2,000 or more in any one day; and

<u>Third</u>, that five or more persons, including the defendant, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

The first element the Government must prove beyond a reasonable doubt is that the gambling business charged in the Indictment violated the laws of the state of New York.

The Indictment charges that the gambling business in question involved joker

poker type gambling machines. To prove this element the Government must prove that the business violated New York law. New York State Penal Law § 225.30(2) provides that:

> (1) A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he or she manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
>
> (2) Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.

I will now give you the meaning of the following terms: possess, gambling device, unlawful, advance gambling activity and intent.

"Possess" means to have physical possession or otherwise to exercise dominion or control over tangible property. Under New York State law, proof of possession of any gambling device is presumptive evidence of possession thereof with knowledge of its character or contents. What this means is that if the Government has proven beyond a reasonable doubt that the defendant was in possession of a gambling device, you may, but you are not required to, infer that the defendant had knowledge of its character or contents.

"Gambling device" means any device, machine, paraphernalia or equipment which is used or usable in the playing phases of any gambling activity, whether such activity

consists of gambling between persons or gambling by a person involving the playing of a machine. Notwithstanding the foregoing, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices.

"Unlawful" means prohibited by law. Under New York State law, with certain exceptions not applicable here, a person has no legal right to engage in gambling activity.

A person "advances gambling activity" when, acting other than as a player, that person engages in conduct which materially aids any form of gambling activity.

A person "engages in gambling activity" when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome. Moreover, "something of value" is defined to include "any money or property."

Based upon these definitions, I instruct you that the operation of joker poker type gambling machines when for the purpose of gambling activity constitutes a form of illegal gambling in violation of New York State law and 18 U.S.C. § 1955.

For the remaining elements of the crime that must be proven beyond a reasonable doubt in order to prove that the defendant conducted an illegal gambling business in

violation of federal law, you should apply the law as previously instructed with respect to Racketeering Act One.

<u>Aiding and Abetting</u>

As I previously mentioned, Racketeering Act Two is also charged under an aiding and abetting theory, that is that the defendant aided and abetted the operation of the illegal gambling operation charged in Racketeering Act Two. Thus you may find Racketeering Act Two proven, if you find that the defendant aided and abetted the operation of the illegal gambling operation charged.

In your deliberations with regards to whether the defendant aided and abetted the operation of the illegal gambling operation charged, you should apply my previous instructions on aiding and abetting as provided with respect to Racketeering Act One.

**Racketeering Act Three**
**<u>Conspiracy to Murder and Attempted Murder of David Nunez</u>**

Racketeering Act Three charges the defendants VINCENT BASCIANO and PATRICK DEFILIPPO with two separate crimes under New York State Law. Racketeering Act Three (A) charges the defendants with the conspiracy to murder David Nunez. Racketeering Act Three (B) charges the defendants with the attempted murder of, or aiding and abetting the attempted murder of, David Nunez. The charge reads:

> The defendants VINCENT BASCIANO and PATRICK DEFILIPPO,

together with others, committed the following acts, either one of which alone constitutes racketeering act three:

A. Conspiracy to Murder John Doe #1: On or about and between October 1985 and November 14, 1985, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants VINCENT BASCIANO and PATRICK DEFILIPPO, together with others, knowingly and intentionally conspired to cause the death of John Doe #1, an individual whose identity is known to the grand jury, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B. Attempted Murder of John Doe #1: On or about November 14, 1985, within the Southern District of New York, the defendants VINCENT BASCIANO and PATRICK DEFILIPPO, together with others, knowingly and intentionally attempted to cause the death of John Doe #1, an individual whose identity is known to the grand jury, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

_____John Doe #1 is David Nunez.

Racketeering Act Three (A): Conspiracy to Murder David Nunez

The law of New York provides that a person intends to commit the crime of murder when his conscious aim or objective is to cause the death of that person.

I have already instructed you on the law applicable to conspiracy under state law. To reiterate, in order for you to find that a defendant committed the New York State crime of conspiracy to commit murder, the Government must prove beyond a reasonable doubt each of the following elements:

First, that two or more persons knowingly entered into a conspiratorial agreement

with the intention to commit the murder identified in the particular racketeering act;

Second, that the defendant knowingly became a party to the conspiratorial agreement with the intent to commit the murder identified in the particular racketeering act; and

Third, that one of the conspirators acted in furtherance of the agreement to commit the murder named in the particular racketeering act.

The elements of the crime of conspiracy as defined by New York law are virtually identical with the elements of the crime of conspiracy under federal law. I have already instructed you as to those elements in my general instructions about the law of conspiracy and I refer you to those instructions.

As mentioned earlier, the Government need not prove an express or formal agreement. Your common sense will tell you that conspirators do not ordinarily broadcast their agreement. You may infer the agreement from the circumstances and conduct of the parties. New York law, like federal conspiracy law, requires that if you find a conspiracy existed, you must then determine whether the defendant became a member of it.

New York's conspiracy law does not punish an evil state of mind alone without proof that talk has been converted into action. Such an act must satisfy you that the

conspirators intended to send planning into action in order to accomplish the conspiracy's goal.

New York's conspiracy law provides, with respect to the first two elements, that a person acts knowingly in entering and joining a conspiratorial agreement when he is aware of its nature and its purpose. Here, the Government alleges that the nature and purpose of the conspiracy charged in this racketeering act was intentional murder.

The third element requires that you must find that one of the conspirators committed an act related to the conspiratorial agreement. The act itself need not be criminal.

I further instruct you that it is not necessary for the Government to prove that each member of the conspiracy — or the defendant — performed, committed, or participated in a particular overt act, since the act of any one coconspirator becomes the act of all members of the conspiracy.

The racketeering statute, however, does not require the Government to allege any particular overt act in the indictment. The murder conspiracy, for purposes of the racketeering charge, is proved so long as you find some over act to have been committed, regardless of whether that act is set forth in the indictment. In other words, so long as you all agree that one of the conspirators committed any overt act in order to accomplish

one of the objectives of that conspiracy, the overt act element of the crime is satisfied. All that is required is that you all agree that the same overt act was committed.

If you find that the Government has proven beyond a reasonable doubt all of the elements of a particular conspiracy to commit murder as to the defendant, you should find that racketeering act proved as against the defendant. If you find that the Government has not established those elements beyond a reasonable doubt, you must find that racketeering act not proven as against the defendant.

Racketeering Act Three (B): Attempted Murder of David Nunez

I will now instruct you on the law applicable to attempted murder. In order for you to find that the defendants committed the New York State crime of attempted murder, the Government must prove beyond a reasonable doubt each of the following elements:

First, that the defendant intended to commit the crime of murder, and,

Second, that the defendant engaged in conduct which tended to effect the commission of that crime.

The law of New York provides that a person acts with an intent to commit the crime of murder when his conscious objective is to kill another person. Conduct which attempted to effect the commission of a crime means conduct which comes dangerously close or very near to the completion of the intended crime. Therefore, if a person intends

to commit a crime and engages in conduct which carries his purpose forward within dangerous proximity to the completion of the intended crime, he is guilty of an attempt to commit that crime. It does not matter that the intended crime was not actually completed.

A defendant's conduct must be directed toward the accomplishment of the intended crime. It must go beyond planning and mere preparation but the conduct involved must go far enough that it comes dangerously close to or very near the completion of the intended crime, which in this case is murder.

If you find that the Government has not proven beyond a reasonable doubt either one or both of those elements, you must find the defendant not guilty of the crime of attempted murder.

**Racketeering Act Four**
**Illegal Gambling – Bookmaking**

Racketeering Act Four of the Indictment charges the defendant PATRICK DEFILIPPO with participating in an illegal bookmaking operation and alternatively with aiding and abetting illegal bookmaking. Racketeering Act Four (A) charges the defendant with participating in such an illegal gambling activity in violation of federal law, and Racketeering Act Four (B) charges the defendant with participating in such an illegal gambling activity in violation of New York State law. If you find that the

defendant committed illegal bookmaking, you must find that the Government has proven Racketeering Act Four.

Racketeering Act Four (A)

I will begin with Racketeering Act Four (A), which reads:

> In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

The illegal gambling charge contained in Racketeering Act Four (A) pertains to illegal gambling under Section 1955 of Title 18 of the United States Code and alternatively, aiding and abetting illegal gambling under Section 2 of Title 18 of the United States Code.

I have already instructed you on the law applicable to illegal gambling and aiding and abetting under federal law.

To reiterate, in order to prove that the defendant conducted an illegal gambling business under federal law, the Government must prove beyond a reasonable doubt each

of the following three elements of the crime:

First, that the gambling business charged in the Indictment violated the laws of the state of New York;

Second, that the gambling business was in substantially continuous operation for a period in excess of thirty days (or had gross revenues of $2,000 or more in any one day); and

Third, that five or more persons, including the defendant, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

The first element the Government must prove beyond a reasonable doubt is that the gambling business charged in the Indictment violated the laws of the state of New York.

In Racketeering Act Four, the Indictment charges that the gambling business in question involved bookmaking or sports betting. To prove this element the Government must prove that the business violated New York Penal Law.

Under New York State Penal Law § 225.05, a person is guilty of promoting gambling in the second degree when he or she knowingly advances or profits from unlawful gambling activity.

Under New York State Penal Law § 225.10, a person is guilty of promoting gambling in the first degree when he or she knowingly advances or profits from unlawful gambling activity by engaging in bookmaking to the extent that he receives or accepts in

any one day more than five bets totaling more than five thousand dollars.

"Unlawful" means not specifically authorized by law.

A person "advances gambling activity" when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes, but is not limited to, conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefore, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

A person also “advances gambling activity” when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation.

A person "profits from gambling activity" when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates in the proceeds of gambling activity.

A person “engages in gambling activity” when he stakes or risks something of

value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain gambling outcome. Moreover, “something of value” is defined to include “any money or property.”

“Player” means a person who engages in any form of gambling solely as a contestant or bettor, without receiving or becoming entitled to receive any profits therefrom, other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of the particular gambling activity. A person who gambles at a social game of chance on equal terms with the other participants therein does not otherwise render material assistance to the establishment, conduct or operation thereof by performing, without fee or remuneration, acts directed toward the arrangement or facilitation of the game, such as inviting persons to play, permitting the use of premises therefore and supplying cards or other equipment used therein. A person who engages in “bookmaking” is not a “player.”

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.

I instruct you that bookmaking constitutes a form of illegal gambling in violation

of New York State law and 18 U.S.C. § 1955.

For the remaining elements of the crime that must be proven beyond a reasonable doubt in order to prove that the defendant conducted an illegal gambling business in violation of federal law, you should apply the law as previously instructed with respect to Racketeering Act One.

Aiding and Abetting

As I previously mentioned, Racketeering Act Four is also charged under an aiding and abetting theory, that is that the defendant aided and abetted the operation of the illegal gambling operation charged in Racketeering Act Four. Therefore, you may find Racketeering Act Four proven, if you find that the defendant aided and abetted the operation of the illegal gambling operation charged.

In your deliberations with regards to whether the defendant aided and abetted the operation of the illegal gambling operation charged, you should apply my previous instructions on aiding and abetting as provided with respect to Racketeering Act One.

Racketeering Act Four (B)

The next crime charged under Racketeering Act Four is illegal gambling and alternatively aiding and abetting under New York State law. Racketeering Act Four (B) reads:

> In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking, in that he received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

Section 225.10(1) of New York Penal Law makes it illegal to knowingly advance or profit from unlawful gambling activity by engaging in bookmaking to the extent that the defendant receives or accepts in any one day more than five bets totaling more than five thousand dollars.

A person "advances gambling activity" when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefore, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation. One advances gambling activity when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or

continue or makes no effort to prevent its occurrence or continuation.

A person "profits from gambling activity" when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity.

"Bookmaking" means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events.

The Government is not required to prove that the defendant performed any act of gambling prohibited by New York law. It is only required to prove that the business violated New York law.

New York Law: Aiding and Abetting

As I mentioned, the defendant is also charged with aiding and abetting an illegal bookmaking operation.

I have already instructed you on New York State Law as it pertains to aiding and abetting, and you should apply the law to Racketeering Act Four (B) as previously instructed.

To reiterate, one charged with aiding and abetting a crime may be liable for the crime even if he himself does not commit the actual crime charged. The second person is

"criminally liable" for the conduct of a person who commits a criminal act if that second person acts with the intention that the crime be committed and solicits, requests, commands, induces, importunes, or intentionally aids another to commit the crime.

If the Government establishes criminal intent, the common purpose, and a solicitation, request, command, inducement, importuning or intentional aid to the actual commission of the crime, on the part of the defendant that defendant is equally liable for the criminal act.

One who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself. To summarize briefly my instructions, you will recall that before you can find these racketeering acts proved on a theory of aiding and abetting, you must first find that the crime was actually committed by someone, that the defendant must have willfully associated himself in some way with the criminal venture, and must have willfully participated in it as something he wanted to bring about.

**Racketeering Act Five**
**<u>Extortionate Extension of Credit – Generoso Barbieri</u>**

Racketeering Act Five charges the defendant VINCENT BASCIANO with making an extortionate extension of credit to Generoso Barbieri. Racketeering Act Five reads:

> In or about and between January 1990 and December 1994, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly

and intentionally made an extortionate extension of credit to John Doe #2, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 892(a) and 2.

John Doe #2 is Generoso Barbieri. Section 892 of Title 18 of the United States Code provides in pertinent part that "[w]hoever makes any extortionate extension of credit or conspires to do so ... [commits a crime]."

The statute further provides that:

In any prosecution under this section, if it is shown that all of the following factors were present [then you may infer] that the extension of credit was extortionate ...

(1) The repayment of the extension of credit ... would be unenforceable through civil judicial processes against the debtor ... at the time the extension of credit was made.

(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum . . .

(3) At the time the extension of credit was made the debtor reasonably believed that either one or more extensions of credit by the creditor had been collected ... by extortionate means [or that] the creditor had a reputation for the use of extortionate means to collect extensions of credit ... [and]

(4) ... the total of the extensions of credit ... then outstanding ... exceeded $100.

To prove the charge of extortionate extension of credit, each of the following elements must be established beyond a reasonable doubt:

<u>First</u>, that the defendant made an extension of credit.

Second, that there was an understanding between the defendant and the borrower, express or implied, tacit or otherwise, that if the borrower delayed in making his repayments or if there was a total failure to repay, violence or other criminal means would be used to force repayment.

Third, that in doing so the defendant acted knowingly, willfully, and unlawfully.

The first element is that the defendant made an extension of credit.

To "extend credit" means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred. It makes no difference whether the debt or claim in question is valid or acknowledged, or how it may have arisen. It further does not matter if the credit was not in fact extended, for the statute is violated if there was a mere agreement to make an extortionate extension of credit.

The second element of the offense is that it was the understanding of the defendant and the borrower, at the time of the extension of credit, that delay or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, or to the reputation or property of some person.

In this context, the word "understanding" means merely comprehension or awareness. It must be emphasized that it is the awareness of the parties at the time of the loan which is crucial. The actual fear of the borrower is not relevant to this

determination, nor does the statute require proof of express threats. What is required is that the threat of violence exist and that it be comprehended by the victim. If so, the extortionate nature of the transaction is present.

The third element of the offense is knowing participation in the extortionate extension of credit. Knowingly means to act voluntarily and purposely and not by mistake or accident or other innocent reasons.

**Racketeering Act Six**
**Extortionate Extension of Credit – John Palazzolo**

Racketeering Act Six charges the defendant VINCENT BASCIANO with making an extortionate extension of credit to John Palazzolo. Racketeering Act Six reads:

> In or about and between January 1990 and December 1994, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #3, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 892(a) and 2.

John Doe #3 is John Palazzolo. In your deliberations with regards to whether the defendant committed the extortionate extension of credit charged, you should apply my previous instructions on extortionate extension of credit as provided with respect to Racketeering Act Five.

**Racketeering Act Seven**
**<u>Extortionate Collection of Credit Conspiracy</u>**

Racketeering Act Seven charges the defendant PATRICK DEFILIPPO with conspiring to collect an extension of credit through extortionate means. The charge reads:

> In or about and between December 1996 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally conspired to use of extortionate means to collect extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

As I mentioned previously, a conspiracy to commit a crime is an entirely separate and different offense from the crime the alleged conspirators intend to commit. At the heart of the crime of conspiracy is an agreement or understanding by two or more persons to violate other laws. Thus, if a conspiracy exists, even if it should fail to achieve its purpose, it is still punishable as a crime. Consequently, for a defendant to be guilty of conspiracy, there is no need for the Government to prove that he or any other conspirator actually succeeded in their criminal goal.

In order to prove the extortionate collection of credit conspiracy charged in the Indictment, the Government must establish the following elements of the crime beyond a reasonable doubt:

> First, that two or more persons entered into the unlawful agreement charged in the Indictment; and
>
> Second, that the defendant knowingly and intentionally became a member of that conspiracy.

Before I address the elements of the conspiracy, I will explain to you the underlying crime so that you can understand what the defendant is being charged with conspiring to do.

Section 894 of Title 18 of the United States Code provides in pertinent part that:

> Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means (1) to collect or attempt to collect any extension of credit, or (2) to punish any person for the nonrepayment thereof [commits a crime].

To prove a violation of section 894, each of the following elements must be established beyond a reasonable doubt:

First, that the defendant collected or attempted to collect an extension of credit.

Second, that the defendant used extortionate means to collect or attempt to collect the extension of credit.

Third, that the defendant participated knowingly in the use of extortionate means.

The first element of the offense is that the defendant collected or attempted to collect an extension of credit.

To "collect" means simply, in any way, to induce a person to make a payment of money. To "extend credit" means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred. It makes no difference whether the debt or claim in question is valid or acknowledged, or how it may have arisen.

The second element of the offense is that extortionate means were used to collect or attempt to collect an extension of credit.

The statute defines "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." Actions need not generate actual fear, but must have been intended to induce fear in an ordinary person. The second element, in other words, is directed at the conduct of the actor, not at the state of mind of the victim.

You should note that the phrase "other criminal means" does not include any use or threatened use of the legal system to collect payment on a loan -- even if the loan in question is usurious, or even if the papers on which a legal action would be based (for example, mortgage papers or loan agreements) are fraudulent. Use of fraudulent papers may result in other criminal penalties, but it is not extortionate under federal law. What is extortionate is a method of collection involving the use or threatened use of physical

harm to persons or property, taking or threatening to take property without a legal right to do so, or other extralegal efforts to intimidate a debtor.

The third element of the offense is knowing participation in the use of extortionate means. Knowingly means to act voluntarily and purposely and not by mistake or accident or other innocent reasons.

The Unlawful Agreement

In proving the elements of conspiracy to violate Section 894 of Title 18 of the United States Code, the Government must first prove that two or more persons entered into the unlawful agreement charged in the Indictment (specifically, that two or more persons acted knowingly, willfully or unlawfully in agreeing to collect or attempt to collect an extension of credit with the understanding that violence or other criminal means could be used to force repayment). Proof of some other agreement, criminal or not, would not suffice. Only evidence of the charged extortionate collection of credit conspiracy can prove this charge.

In order to meet its burden, the Government need not prove that members of the conspiracy met together and entered into an express or formal agreement. You need not find that the alleged conspirators stated, either verbally or written, what the scheme consisted of, its object or purpose, or the means by which it was to be accomplished. It

is sufficient to show that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act (in this case extortionate collection of credit) by means of a joint plan or common design.

Defendants' Membership in the Charged Conspiracy

If you are convinced beyond a reasonable doubt that the Government has proved the specific extortionate collection of credit conspiracy charged in Racketeering Act Seven, you must then consider the second element of the crime of conspiracy and determine whether the Government has also proved beyond a reasonable doubt that defendant PATRICK DEFILIPPO knowingly and willfully became a member or participated in the charged conspiracy.

As I mentioned earlier, a person acts knowingly if he acts voluntarily and purposely and not because of a mistake, negligence, or some other innocent reason. A person acts intentionally if he acts willfully with the specific intent to do something the law forbids, which in this case would be the specific intent to collect credit through extortionate means.

Mere presence at a place where criminal conduct is underway does not make a person a member of a conspiracy to commit that crime. This is true even if the person knows a crime is being committed. Similarly, the fact that a defendant, without any

knowledge that a crime is being committed, merely happens to act in a way that furthers the purposes or objectives of the conspiracy does not make that person a member. It is required that a defendant has participated with knowledge of at least some of the purposes or objectives of the conspiracy –- in this case, with knowledge that the purpose of the scheme was to collect credit through extortionate means -– and with the intention of aiding in the accomplishment of that unlawful end.

Each member of a conspiracy may perform separate and distinct acts, and may perform them at different times. Some conspirators may play major roles, while others play minor parts in the scheme. Again, a defendant need not have known the identities of every other member of the scheme, and must not have been a member of the conspiracy for the entire duration of its existence. A defendant also need not have been fully informed as to all of the details or the scope of the conspiracy. The key inquiry is simply whether the defendant joined the charged conspiracy with an awareness that its basic aim and purpose was to collect credit through extortionate means, and with the intent to help it succeed in achieving that criminal objective.

If you find beyond a reasonable doubt that the conspiracy existed and the defendant knowingly and willfully became a member of the conspiracy to collect credit through extortionate means, you must find him guilty of Racketeering Act Nine.

**Racketeering Act Eight**
**Extortionate Collection of Credit – Frank Giannini**

The Indictment charges the defendant PATRICK DEFILIPPO with extortionate collection of credit from Frank Giannini. The charge reads:

> In or about and between December 1996 and December 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #4, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

John Doe #4 is Frank Giannini. Section 894 of Title 18 of the United States Code provides in pertinent part that:

> Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means (1) to collect or attempt to collect any extension of credit, or (2) to punish any person for the nonrepayment thereof [commits a crime].

To prove a violation of section 894, each of the following elements must be established beyond a reasonable doubt:

First, that the defendant collected or attempted to collect an extension of credit.

Second, that the defendant used extortionate means to collect or attempt to collect the extension of credit.

Third, that the defendant participated knowingly in the use of extortionate means.

The first element of the offense is that the defendant collected or attempted to

collect an extension of credit.

To "collect" means simply, in any way, to induce a person to make a payment of money. To "extend credit" means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred. It makes no difference whether the debt or claim in question is valid or acknowledged, or how it may have arisen.

The second element of the offense is that extortionate means were used to collect or attempt to collect an extension of credit.

The statute defines "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." Actions need not generate actual fear, but must have been intended to induce fear in an ordinary person. The second element, in other words, is directed at the conduct of the actor, not at the state of mind of the victim.

You should note that the phrase "other criminal means" does not include any use or threatened use of the legal system to collect payment on a loan--even if the loan in question is usurious, or even if the papers on which a legal action would be based (for example, mortgage papers or loan agreements) are fraudulent. Use of fraudulent papers may result in other criminal penalties, but it is not extortionate under federal law. What

is extortionate is a method of collection involving the use or threatened use of physical harm to persons or property, taking or threatening to take property without a legal right to do so, or other extralegal efforts to intimidate a debtor.

The third element of the offense is knowing participation in the use of extortionate means. Knowingly means to act voluntarily and purposely and not by mistake or accident or other innocent reasons.

**Racketeering Act Nine**
**<u>Extortionate Collection of Credit – Andrew LNU (Last Name Unknown)</u>**

_____The Indictment charges the defendant PATRICK DEFILIPPO with extortionate collection of credit from Andrew LNU (Last Name Unknown). The charge reads:

> In or about and between January 1998 and August 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #5, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

John Doe #5 is Andrew LNU (Last Name Unknown). I previously instructed you on the elements the Government must prove beyond a reasonable doubt for the charge of extortionate collection of credit. I refer you to Racketeering Act Eight for those instructions.

**Racketeering Act Ten**

**Murder – Gerlando Sciascia**

Racketeering Act Ten charges the defendant PATRICK DEFILIPPO with two separate crimes under New York State Law. Racketeering Act Ten (A) charges the defendant with the conspiracy to murder Gerlando Sciascia. Racketeering Act Ten (B) charges the defendant with the murder of and alternatively, aiding and abetting the murder of Gerlando Sciascia. If you find that the defendant committed either of these crimes, you must find that the Government has proven Racketeering Act Ten, which reads:

> The defendant PATRICK DEFILIPPO, together with others, committed the following acts, either one of which alone constitutes racketeering act ten:
>
> A. Conspiracy to Murder Gerlando Sciascia
>
> On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally conspired to cause the death of Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 105.15.
>
> B. Murder of Gerlando Sciascia
>
> On or about March 18, 1999, within the Southern District of New York, the defendant PATRICK DEFILLIPO, together with others, with intent to cause the death of Gerlando Sciascia, also known as "George from Canada," caused his death, in violation of New York Penal Law Sections 125.25(1)

and 20.00.

Racketeering Act Ten (A)

I have already instructed you on the law applicable to conspiracy under state law. To reiterate, in order for you to find that a defendant committed the New York State crime of conspiracy to commit murder, the Government must prove beyond a reasonable doubt each of the following elements:

> First, that two or more persons knowingly entered into a conspiratorial agreement with the intention to commit the murder identified in the particular racketeering act;
>
> Second, that the defendant knowingly became a party to the conspiratorial agreement with the intent to commit the murder identified in the particular racketeering act; and
>
> Third, that one of the conspirators acted in furtherance of the agreement to commit the murder named in the particular racketeering act.

As I instructed earlier, the law of New York provides that a person acts with an intent to commit murder when his conscious objective is to kill another person.

The elements of the crime of conspiracy as defined by New York State law are virtually identical with the elements of the crime of conspiracy under federal law. I have already instructed you as to those elements in my general instructions about the law of conspiracy and I refer you to those instructions.

As mentioned earlier, the Government need not prove an express or formal agreement. Your common sense will tell you that conspirators do not ordinarily broadcast their agreement. You may infer the agreement from the circumstances and conduct of the parties.

New York law, like federal conspiracy law, requires that, if you find a conspiracy existed, you must then determine whether the defendant became a member of it.

New York's conspiracy law does not punish an evil state of mind alone without proof that talk has been converted into action. Such an act must satisfy you that the conspirators intended to send planning into action in order to accomplish the conspiracy's goal.

New York's conspiracy law provides, with respect to the first two elements, that a person acts knowingly in entering and joining a conspiratorial agreement when he is aware of its nature and its purpose. Here, the Government alleges that the nature and purpose of the conspiracy charged in these racketeering acts was intentional murder.

The third element requires that you must find that one of the conspirators committed an act related to the conspiratorial agreement. The act itself need not be criminal.

I further instruct you that it is not necessary for the Government to prove that each

member of the conspiracy -- or the defendant -- performed, committed, or participated in a particular overt act, since the act of any one coconspirator becomes the act of all members of the conspiracy.

The racketeering statute, however, does not require the Government to allege any particular overt acts in the Indictment. The murder conspiracy, for purposes of the racketeering charge, is proved so long as you find some overt act to have been committed, regardless of whether that act is set forth in the Indictment.

In other words, so long as you all agree that one of the conspirators committed any overt act in order to accomplish one the objectives of that conspiracy, the overt act element of the crime is satisfied. All that is required is that you all agree that the same overt act was committed.

If you find that the Government has proved beyond a reasonable doubt all of the elements of a particular conspiracy to commit murder as to the defendant, you should find that racketeering act proved as against the defendant. If you find that the Government has not established those elements beyond a reasonable doubt, you must find that racketeering act not proved as against the defendant.

Racketeering Act Ten (B)

The crime charged under Racketeering Act Ten (B) is the murder of Gerlando

Sciascia and alternatively, aiding and abetting the murder of Gerlando Sciascia. Under New York State Penal Law,

> A person is guilty of murder . . . when: With intent to cause the death of another person, he causes the death of such person or of a third person.

The crime of murder under New York state law has the following two elements:

First, that the defendant intended to cause the death of another person; and

Second, that the defendant did in fact cause the death, or aided and abetted another person's causing of the death of that person or a third person.

Under the murder statute, a person intends to cause the death of another person when his conscious aim or objective is to cause the death of that person.

Thus, in order to find that the defendant murdered or aided and abetted another person in murdering Gerlando Sciascia, you must find that the Government has proven the following two elements beyond a reasonable doubt, that on or about March 18, 1999, the defendant intended to commit the crime charged, which in this case is the murder of Gerlando Sciascia, and that the defendant willfully engaged in conduct or willfully aided and abetted someone else in engaging in conduct which caused the death of Gerlando Sciascia.

Aiding and Abetting

I further instruct you that with respect to the charged murder in Racketeering Act

Twelve, the defendant PATRICK DEFILIPPO is alternatively charged with aiding and abetting the murder of Gerlando Sciascia. As I previously instructed you, one who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself. Thus, under New York law, one may be liable for the crime even if he himself did not attempt to kill the person. The second person is "criminally liable" for the conduct of a person who commits a criminal act if that second person acts with the intention that the crime be committed and solicits, requests, commands, induces, importunes, or intentionally aids another to commit the crime.

Thus, if the Government establishes criminal intent, the common purpose, and a solicitation, request, command, inducement, importuning or intentional aid to the actual commission of the crime on the part of the defendant, that defendant is equally liable for the criminal act.

As I instructed you earlier, one who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.

**Racketeering Act Eleven**
**<u>Murder – Frank Santoro</u>**

Racketeering Act Eleven charges the defendant VINCENT BASCIANO with two separate crimes under New York State Law. Racketeering Act Eleven (A) charges the defendant with the conspiracy to murder Frank Santoro. Racketeering Act Eleven (B)

charges the defendant with the murder of or aiding and abetting the murder of Frank Santoro. If you find that the defendant committed either of these crimes, you must find that the Government has proven Racketeering Act Eleven, which reads:

> The defendant VINCENT BASCIANO, together with others, committed the following acts, either one of which alone constitutes racketeering act eleven:
>
> A. Conspiracy to Murder Frank Santoro
>
> On or about and between January 1, 2001 and February 15, 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to cause the death of Frank Santoro, in violation of New York Penal Law Sections 125.25(1) and 105.15.
>
> B. Murder of Frank Santoro
>
> On or about February 15, 2001, within the Southern District of New York, the defendant VINCENT BASCIANO, together with others, with intent to cause the death of Frank Santoro, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

I have already instructed you on the law on conspiracy to murder as well as the law on murder and the alternative charge of aiding and abetting murder. Those instructions were provided with respect to Racketeering Act Ten, and you should follow those instructions and apply the law accordingly when deliberating on Racketeering Act Eleven.

**Racketeering Act Twelve**

**<u>Solicitation to Murder – Dominick "Donnie" Martino</u>**

Racketeering Act Twelve charges the defendant VINCENT BASCIANO with soliciting the murder of Dominick "Donnie" Martino and alternatively, with aiding and abetting the solicitation to murder Dominick Martino. Racketeering Act Twelve reads:

> In or about and between December 2001 and March 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally solicited, requested, importuned and otherwise attempted to cause another person to cause the death of John Doe #6, an individual whose identity is known to the grand jury, with intent that such other person cause the death of John Doe #6, in violation of New York Penal Law Section 125.25(1), in violation of New York Penal Law Sections 100.10 and 20.00.

John Doe #6 is Dominick "Donnie" Martino. The solicitation statute, New York Penal Law Section 100.10, provides that:

> A person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a class A felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct.

In order to prove the solicitation to murder charge, the Government must establish the following elements of the crime beyond a reasonable doubt:

> <u>First</u>, that the defendant solicited, requested, commanded, importuned or otherwise attempted to cause another person to murder John Doe #6; and
>
> <u>Second</u>, that the defendant's actions strongly indicated that he intended the

other person to cause the death of John Doe #6.

It is a defense to the charge of solicitation that the defendant abandoned the crime after having solicited its commission, and that he actually prevented it from occurring. If you find that the defendant has persuaded you, by a preponderance of the evidence, that he voluntarily and completely abandoned his criminal intent, and that he actually prevented the commission of the crime that he had previously solicited, then you must acquit the defendant on the charge of solicitation.

In determining whether a voluntary and complete abandonment or renunciation has occurred, I instruct you that a renunciation would not be voluntary and complete if the evidence showed that it had been motivated in whole or in part by a decision to postpone commission of the crime until another time or to substitute another victim or another similar objective.

I instruct you that it is no defense to a prosecution for soliciting a crime that the person solicited could not be convicted of the crime of murder because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution or is not subject to prosecution.

**Racketeering Act Thirteen**
**<u>Extortionate Collection of Credit Conspiracy – Peter Calabrese</u>**

Racketeering Act Thirteen charges the defendant VINCENT BASCIANO with

conspiring to collect an extension of credit through extortionate means of Peter Calabrese. The charge reads:

> In or about and between January 2004 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect an extension of credit from John Doe #7, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

John Doe #7 is Peter Calabrese. I previously instructed you on the elements the Government must prove beyond a reasonable doubt for the charge of extortionate collection of credit conspiracy. I refer you to Racketeering Act Seven for those instructions.

**Count Two**
**Illegal Gambling – Joker Poker Machines**

Count Two, which corresponds with Racketeering Act Two, charges the defendants VINCENT BASCIANO and PATRICK DEFILIPPO with having knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business involving the use of joker poker type gambling machines. Thus, Count Two states:

> In or about and between January 1979 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny

> Gorgeous" and "Vinny from the Bronx," and PATRICK DEFELIPPO, also known as "Patty from the Bronx," together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving the use of joker poker type gambling machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.30(2) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day. (Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

In your deliberations as to Count Two, refer to the instructions on illegal gambling and aiding and abetting for Racketeering Act Two, except that in addition I instruct you on defendants' statute of limitations defense to this count.

Title 18 of the United States Code Section 3282(a) states:

> "...no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

Accordingly, in addition to proving beyond a reasonable doubt each of the elements of Count Two, Illegal Gambling - Joke Poker Machines, the government must also prove that the defendants engaged in the conduct which constitutes the crime charged occurred or continued within five years of the date of this indictment, November 19, 2004. In other words, the government must prove that the defendants' conduct fell

within the statute of limitations, which would be on or after November 20, 1999.

The defendants have the burden of proving, by a preponderance of the evidence, that any conduct by them involving Joker Poker Machines falls outside the time period of the Statute of Limitations.

**Count Three**
**Illegal Gambling Conspiracy -- Bookmaking**

Count Three charges the defendant PATRICK DEFILIPPO with having knowingly and intentionally conspired to conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a bookmaking operation. Thus, Count Three states:

> In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, knowingly and willfully conspired to conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Section 1955.
>
> In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, committed and caused to be committed, among others, the following:

Overt Acts

> On or about June 11, 2001, a coconspirator discussed the gambling operation, including the daily "wins" and "losses" from a gambling room in Brooklyn, New York.
>
> On or about August 28, 2001, a coconspirator discussed the gambling operation, including the daily "wins" and "losses" from a gambling room in Brooklyn, New York.

Count Three differs from Racketeering Act Four and Count Four in that it charges the defendant with conspiring to conduct an illegal gambling business, rather than charging him with actually conducting such a business in the form of a bookmaking operation.

In your deliberations on the charge of an illegal gambling conspiracy, follow the instructions previously provided for conspiracies. To briefly reiterate, there are three elements of the crime of conspiracy that the Government must prove:

> First, it must be proved that two or more persons entered into the particular unlawful agreement charged in the count that you are considering;
>
> Second, it must be proved that the defendant knowingly and intentionally became a member of the conspiracy; and
>
> Third, as to this charge in the Indictment, it must be proved that at least one overt act was committed by at least one of the conspirators.

**Count Four**

**Illegal Gambling -- Bookmaking**

Count Four, which corresponds with Racketeering Act Four, charges the defendant PATRICK DEFILIPPO with having knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a bookmaking operation. Thus, Count Four states:

> In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day. (Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

I have already instructed you on the law on illegal gambling and aiding and abetting. In your deliberations as to Count Four, apply the instructions provided for Racketeering Act Four.

**Count Five**
**Extortionate Collection of Credit Conspiracy**

_____Count Five, which corresponds to Racketeering Act Seven, charges the defendant PATRICK DEFILIPPO with a conspiracy to use extortionate means to collect extensions of credit, in violation of Title 18, United States Code, 894. Thus, Count Five states:

> In or about and between December 1996 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

I provided the instructions on the law on extortionate collection of credit conspiracy for Racketeering Act Seven. In your deliberations as to Count Five, apply the instructions for Racketeering Act Seven.

**Count Six**
**Extortionate Collection of Credit – Frank Giannini**

Count Six, which corresponds to Racketeering Act Eight, charges the defendant PATRICK DEFILIPPO with using extortionate means to collect an extension of credit, in violation of Title 18, United States Code, 894. Thus, Count Six states:

> In or about and between December 1996 and December 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, knowingly and intentionally participated in the use of extortionate means to collect an extension of credit from John Doe #4.(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

John Doe #4 is Frank Giannini. I provided the instructions on the law on extortionate collection of credit for Racketeering Act Eight. In your deliberations as to Count Six, apply the instructions for Racketeering Act Eight.

**Count Seven**
**Extortionate Collection of Credit – Andrew LNU (Last Name Unknown)**

Count Seven, which corresponds to Racketeering Act Nine, charges the defendant PATRICK DEFILIPPO with using extortionate means to collect an extension of credit from Andrew LNU (Last Name Unknown), in violation of Title 18, United States Code, 894. Thus, Count Seven states:

> In or about and between January 1998 and August 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #5. (Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

John Doe #5 is Andrew LNU (Last Name Unknown). I provided the instructions on the law on extortionate collection of credit for Racketeering Act Eight. In your deliberations as to Count Seven, apply the instructions for Racketeering Act Eight.

**Count Eight**
**Murder in Aid of Racketeering – Gerlando Sciascia**

Count Eight charges the defendant PATRICK DEFILIPPO with having knowingly and intentionally murdered Gerlando Sciascia for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno organized crime family of La Cosa Nostra, an enterprise engaged in racketeering activity. Thus, Count Eight states, in pertinent part:

> On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally murdered Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 20.00. (Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

The defendant is charged with violating section 1959 of Title 18 of the United States Code. That section reads as follows:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so [is guilty of a crime].

In order to prove that the defendant violated section 1959, the Government must establish beyond a reasonable doubt each one of the following five elements of the offense:

> First, that an enterprise affecting interstate commerce existed;
>
> Second, that the enterprise was engaged in racketeering activity;
>
> Third, that the defendant had (*or* was seeking) a position in the enterprise;
>
> Fourth, that the defendant committed the alleged crime of violence; and
>
> Fifth, that the defendant's general purpose in committing the crime of violence was to maintain or increase his position in the enterprise (*or* in consideration for the receipt of anything of value).

The First: Existence of Enterprise Affecting Interstate Commerce

I have already instructed you on the law on the definition of "enterprise" and on when you may find that an enterprise engaged in or had an effect on interstate commerce. In your deliberations on this element I refer you to the instructions for Count One, elements 1 and 2. Further, as I have noted, in this case, the defendant PATRICK DEFILIPPO has stipulated both that the enterprise charged in the indictment, the Bonanno organized crime family of La Cosa Nostra, existed on or about the time period alleged in the indictment and that this enterprise engaged in or its activities affected

interstate or foreign commerce. You may therefore accept this stipulation as evidence and regard this element as proved.

The Second Element: Enterprise Engaged in Racketeering Activity

I have already instructed you on the law on when you may find that a pattern of racketeering activity exists and I thus refer you to the instructions for Count One, element four. To prove this element as to Count Eight, however, the government need not prove that the defendant PATRICK DEFILIPPO engaged in a patter of racketeering activity, but that the Bonanno organized crime family of La Cosa Nostra, engaged in a pattern of racketeering activity.

The Third Element: Position in the Enterprise

The third element the Government must establish beyond a reasonable doubt is that the defendant had or was seeking a position in the enterprise.

To establish this element the Government must prove that the defendant was actively engaged in promoting the illegal activities of the enterprise. It is not enough to prove that the defendant was doing business with the enterprise; the Government must prove that he was actually a member of the enterprise. Further, I instruct you that the defendant PATRICK DEFILIPPO has stipulated that he held a position in the Bonanno

organized crime family of La Cosa Nostra. You may therefore accept this stipulation as evidence and regard this element as proved.

The Fourth Element: Alleged Crime of Violence

The crime of violence alleged in Count Eight is the crime of murder under New York Penal Law, or aiding and abetting the murder of Gerlando Sciascia under New York Penal Law. I have already instructed you on the law of murder, or aiding and abetting murder, under New York Law.

The Fifth Element: Maintain or Increase Position In Enterprise

The last element that the Government must prove for Count Eight is that the defendant PATRICK DEFILIPPO acted for the purpose of gaining entrance to, maintaining a position in, or increasing a position in that enterprise.

To establish that a defendant committed the crime alleged for the purpose of "gaining entrance to" or "maintaining" or "increasing" his or her position in the enterprise, the Government must prove that the defendant's general purpose in committing the crime in question was to gain entrance to, increase his or her position in, or maintain his or her position in the enterprise. Self-promotion need not have been the defendant's only, or even his primary concern, if it was committed as an integral aspect of membership in the enterprise. The motive requirement is satisfied if the defendant

committed the crime because it would allow him to gain entrance to the enterprise, because he knew it was expected of him by reason of his association with the enterprise, or because it would enhance his position or prestige within the enterprise.

These examples are by way of illustration and are not exhaustive.

I instruct you that the defendant PATRICK DEFILIPPO does not contest that the murder of Gerlando Sciascia, if you find that PATRICK DEFILIPPO was involved in that murder, was committed for the purposes of gaining entrance to or maintaining or increasing position in the Bonanno family. Therefore, if you find that PATRICK DEFILIPPO was involved in this murder, I instruct you to find that this element is also proved.

Aiding and Abetting Murder of Gerlando Sciascia

The defendant PATRICK DEFILIPPO is also charged with the murder in aid of racketeering of Gerlando Sciascia on an aiding and abetting theory in Count Eight, that is that the defendant aided and abetted the murder in aid of racketeering of Gerlando Sciascia. Therefore, you may find that the defendant PATRICK DEFILIPPO is guilty of Count Eight if you find that he aided and abetted the murder in aid of racketeering of Gerlando Sciascia.

I previously instructed you on the law of aiding and abetting. To reiterate, if you find that a defendant knowingly and willfully aided and abetted another person in the commission of a crime, he is as guilty as if he personally committed it. Before you can convict a defendant on the ground that he aided and abetted the commission of the crimes charged, you must first find that another person committed that crime. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must determine whether the defendant you are considering aided or abetted the commission of that crime.

In order for a defendant to be guilty of aiding and abetting, it is necessary that there be more than mere presence at the scene of the occurrence or knowledge that a crime is being committed and acquiescence in the crime itself. A defendant must have willfully associated himself in some way with the criminal venture and must have willfully participated in it as something he wanted to bring about. That is, a defendant must willfully seek by some act to make the criminal venture succeed. A person acts willfully if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids.

Mere presence or relationship to the person who actually committed the crime even coupled with knowledge that a crime was committed is not enough.

To summarize, you may not find the defendant guilty of this Count unless you find beyond a reasonable doubt that every element of the crime charged as I explained those elements to you, was committed by someone and that the defendant willfully participated in its commission.

In short, if you are satisfied beyond a reasonable doubt that the defendant himself knowingly and willfully committed the crime charged in Count Eight or aided abetted, counseled, commanded, induced, or procured the commission of that crime by someone else, then you should find the defendant PATRICK DEFILIPPO guilty of Count Eight. On the other hand, if the Government has not satisfied you beyond a reasonable doubt that the defendant either knowingly and willfully committed the crime charged in Count Eight or aided or abetted the commission of that crime, then you must find him not guilty of the crime charged in Count Eight.

With respect to Count Eight, the defendant PATRICK DEFILIPPO does not contest the issue of venue and accordingly, to find the defendant guilty on this count, you need not make a finding as to venue.

**Count Nine**
**<u>Conspiracy to Murder in Aid of Racketeering – Gerlando Sciascia</u>**

Count Nine charges the defendant PATRICK DEFILIPPO with having knowingly and intentionally conspired to murder Gerlando Sciascia for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity. Thus, Count Nine states, in pertinent part:

> On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 105.15. (Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

I have already instructed you on the law on murder in aid of racketeering and on conspiracy to murder under New York State Law. In your deliberations on this Count please refer to the instructions for Count Eight for murder in aid of racketeering and to the instructions for Racketeering Act Ten (A) for conspiracy to murder under New York Penal Law.

With respect to Count Nine, the defendant PATRICK DEFILIPPO does not contest the issue of venue and accordingly, to find the defendant guilty on this count, you need not make a finding as to venue.

**Count Ten**

**Use of a Firearm During Crimes of Violence**

Count Ten charges the defendant PATRICK DEFILIPPO with having knowingly and intentionally used, carried and discharged a firearm during and in relation to crimes of violence. The charge reads:

> On or about March 18, 1999, with the Southern District of New York, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, did knowingly and intentionally use, carry and discharge a firearm during and in relation to crimes of violence, to wit: the crimes charged in Count Eight and Count Nine, and possess a firearm in furtherance of such crimes. (Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

The relevant statute on this subject is Title 18, United States Code section 924(c), which provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be guilty of a crime].

Under Count Ten, the defendant is charged with using or carrying a firearm during the commission of crimes of violence, which are charged in Counts Eight and Nine, which charged the defendant PATRICK DEFILIPPO with the murder in aid of racketeering of Gerlando Sciascia and the conspiracy to commit murder in aid of racketeering of Gerlando Sciascia.

If upon all of the evidence you find that the Government has failed to prove Counts Eight or Nine beyond a reasonable doubt, then you will proceed no further. Count Ten is to be considered only if you first find the defendant guilty under Counts Eight or Nine as charged.

In reaching your verdict on Count Ten, you may consider the evidence of Counts Eight or Nine only for the purpose of determining whether the elements of Count Ten have been satisfied.

You may not consider for the purposes of Count Ten any evidence which relates to any Count other than Counts Eight and Nine.

The Government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty of Count Ten:

> First, that the defendant committed a crime of violence for which he might be prosecuted in a court of the United States; and
>
> Second, that the defendant knowingly used (*or* carried) a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of the crimes charged in Counts Eight and Nine.

Aiding and Abetting

The defendant PATRICK DEFILIPPO is also charged in Count Ten with aiding and abetting the use of a firearm during a crime of violence. I have already instructed

you on the federal law of aiding and abetting and instruct you to follow that law as it pertains to Count Ten.

With respect to Count Ten, the defendant PATRICK DEFILIPPO does not contest the issue of venue and accordingly, to find the defendant guilty on this count, you need not make a finding as to venue.

**Count Eleven**
**Extortionate Collection of Credit Conspiracy – Peter Calabrese**

Count Eleven, which corresponds to Racketeering Act Fifteen, charges the defendant VINCENT BASCIANO with a conspiracy to use extortionate means to collect an extension of credit, in violation of Title 18, United States Code, 894. Thus, Count Eleven states:

> In or about and between January 2004 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect an extension of credit from John Doe #7.(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

As noted, John Doe #7 is Peter Calabrese. I provided the instructions on the law on extortionate collection of credit conspiracy for Racketeering Act Seven. In your deliberations as to Count Eleven, apply the instructions for Racketeering Act Seven.

## Part III

## The Closing Instructions

I now will give you some general rules regarding your deliberations.

Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be. That is entirely for you to decide. By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you to the facts as you find them from the evidence.

When you retire, it is your duty to discuss the case for the purpose of reaching a verdict. Each of you must decide the case for yourself. You should make your decision only after considering all the evidence, listening to the views of your fellow jurors, and discussing it fully. It is important that you reach a verdict if you can do so conscientiously. You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced that they are wrong. However, do not surrender an honest conviction as to weight and effect of the evidence simply to arrive at a verdict.

Remember also that your verdict must be based solely on the evidence or lack of evidence in the case and the law as the court has given it to you, not on anything else. Opening statements, closing arguments, or other statements or arguments of counsel are

not evidence. If your recollection of the facts differs from the way counsel has stated the facts to be, then your recollection controls.

Finally, bear in mind that the Government has the burden of proof and that you must be convinced of Mr. Basciano's and Mr. DeFilippo's guilt beyond a reasonable doubt to return a guilty verdict. If you find that this burden has not been met, you must return a verdict of not guilty.

You cannot allow a consideration of the punishment which may be imposed upon Mr. Basciano or Mr. DeFilippo , if convicted, to influence your verdict in any way or to enter into your deliberations.

The duty of imposing sentence rests exclusively with me. Your duty is to weigh the evidence in the case and to determine guilt or innocence solely upon such evidence or lack of evidence and upon the law without being influenced by any assumptions, conjectures, sympathy, or inference not warranted by the facts.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything related to this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me, you may send a note, through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to

communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open court. If you send any notes to the court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone - not even to me - how the jury stands, numerically or otherwise, on the question of the guilt or innocence of Mr. Basciano and Mr. DeFilippo , until after you have reached a unanimous verdict or have been discharged.

When you have reached a decision, have the foreperson sign the verdict form and put the date on it and notify the marshal by note that you have reached a verdict.

Any verdict you reach must be unanimous.

Your oath sums up your duty, and that is: without fear or favor to any person, you will well and truly try the issues in their case according to they evidence given to you in court and the laws of the United States.